PEOPLE v SABIN (AFTER REMAND)

Docket No. 114953. Argued April 4, 2000 (Calendar No. 2). Decided
July 27, 2000.

James A. Sabin was convicted by a jury in the Kalamazoo Circuit
Court, Philip D. Schaefer, J., of first-degree criminal sexual conduct
involving his minor daughter. The Court of Appeals, GRIFFIN, P.J.,
and McDONALD and C. W. JOHNSON, JJ., reversed and remanded for a
new trial on the ground that the trial court erred in admitting evi-
dence regarding the defendant's abuse of his stepdaughter and the
existence of a state agency order prohibiting the defendant from
having contact with children under the age of seventeen, and that
the errors were not harmless. 223 Mich App 530 (1997) (Docket No.
187226). The Supreme Court, in lieu of granting leave to appeal,
remanded the case to the Court of Appeals for reconsideration in
light of *People v Starr*, 457 Mich 490 (1998), and *People v Craw-
ford*, 458 Mich 376 (1998). 459 Mich 924 (1998). On remand, the
Court of Appeals, GRIFFIN, P.J., and McDONALD, J. (WHITBECK, J., dis-
senting), reaffirmed its decision, concluding that *Crawford* sup-
ported it because the defendant's alleged abuse of his stepdaughter
was substantially dissimilar from the charged conduct, and *Starr*
did not alter, contradict, or expand *People v VanderVliet*, 444 Mich
52 (1993). It then concluded that it had properly applied *Vander-
Vliet* in its prior opinion. Regarding the agency order evidence, it
observed that the evidence implied that defendant was on parole at
the time of the offense at issue, and concluded that the evidence
was not relevant to any issue in the case. Alternatively, it held that
the probative value of the evidence, if any, was substantially out-
weighed by the danger of unfair prejudice. 236 Mich App 1 (1999).
The people appeal.

In an opinion by Justice CORRIGAN, joined by Chief Justice
WEAVER, and Justices TAYLOR, YOUNG, and MARKMAN, the Supreme
Court *held*:

The trial court did not abuse its discretion in admitting evidence
that defendant sexually assaulted his stepdaughter and that an
agency order existed prohibiting him from having contact with chil-
dren under the age of seventeen.

1. MRE 404(b)(1) does not require exclusion of otherwise admissible evidence; rather, it reiterates the general rule prohibiting use of evidence of specific acts to prove a person's character to show that the person acted in conformity with character on a particular occasion. This prohibition, however, does not preclude use of the evidence for other relevant purposes. All relevant evidence is admissible, except as otherwise provided by the United States and Michigan Constitutions and other rules. That the Rules of Evidence preclude the use of evidence for one purpose does not render the evidence inadmissible for other purposes. Rather, the evidence is admissible for a proper purpose, subject to a limiting instruction under MRE 105.

2. Under *VanderVliet*, the trial court's initial determination in deciding whether to admit other acts evidence is one of relevance, i.e., evidence that is material and that has probative force. A material fact is one that is in issue in the sense that it is within the range of litigated matters in controversy. The trial court may exclude the admissible evidence of other acts if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. *VanderVliet* encouraged trial courts to utilize a flexible approach for determining admissibility to facilitate the informed exercise of their discretion.

3. Because the prosecution identifies a permissible theory of admissibility and the defendant enters a general denial does not automatically render other acts evidence relevant in a particular case. The trial court must still make an individualized determination of relevance, i.e., it must determine whether the evidence, under a proper noncharacter theory, has a tendency to make the existence of a fact of consequence in the case more or less probable than it would be without the evidence. Evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system. Logical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot. General similarity between the charged and uncharged acts, by itself, does not establish a plan, scheme, or system used to commit the acts. The necessary degree of similarity is greater than that needed to prove intent, but less than that needed to prove identity.

4. In this case, the trial court did not abuse its discretion in determining that the defendant's alleged assault of the complainant

and the alleged abuse of his stepdaughter shared sufficient common features to infer a plan, scheme, or system to do the acts. The charged and uncharged acts contained common features beyond mere commission of acts of sexual abuse. The trial court did not abuse its discretion in declining to exclude the evidence under MRE 403. The evidence was admissible to show the actus reus of the offense. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Likewise, the Court did not abuse its discretion in admitting evidence of the existence of the agency order. The evidence was clearly relevant because it explained the complainant's testimony regarding the threat used by the defendant in an effort to secure her silence. It was also relevant to the issue of the complainant's delay in reporting the assault.

Reversed and remanded.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that the defendant's scheme, plan, or system in doing things was not a purpose offered or articulated at trial as required by *VanderVliet, Crawford,* and *Starr.* Also, the majority fails to show that the evidence of a common plan in this case is relevant apart from its tendency to show that the defendant committed the instant crime because he acted in conformity with his criminal disposition. Finally, the majority errs in creating a rule providing that any similarities among successive crimes proves a plan, and thus proves that the charged offense was committed.

Under *VanderVliet,* something more than a mechanical recitation of the list of "proper purposes" under MRE 404(b) is required. A determination must be made that the purpose claimed is relevant to an issue other than propensity, thus, protecting against the introduction of extrinsic act evidence when that evidence is offered solely to prove character. In order to provide a proper purpose, the evidence must be relevant to a material fact or issue in the case. In this case, it is undisputed that the prosecution did not present the other acts evidence for a proper purpose at trial. As noted in *Starr* and *Crawford,* it is insufficient for the prosecutor, on appeal, to recite purposes that were articulable at trial. Moreover, it is not enough that the trial court may have listed or articulated a proper purpose when accepting the evidence. The prosecutor should not be allowed to list its purposes and rationale at trial, and then grasp for more on appeal when those fail. MRE 404(b)(2) provides the defendant an opportunity to respond to the prosecutor's list of purposes and rationale for admission. If the prosecutor is allowed on appeal to argue that unarticulated purposes existed, compliance with the rule would be discouraged. Under the majority view, how-

ever, prosecutors may ignore the requirements of 404(b)(1) and (2), along with the first requirement of *VanderVliet*. On appeal, they may list any and all proper purposes in an attempt to hit the mark with one, or they may allow the appellate court to find one for them, thereby affirming a criminal conviction.

The majority's analysis of plan, scheme, or system is lacking the "relevance to a fact in issue" requirement. Where the ultimate fact to be proved through other acts evidence is that a criminal act took place, there must be a proper intermediate inference established by the other acts evidence that is probative of whether the crime occurred. The majority has provided no intermediate inference, however. Instead, it adopts the rule that the prosecutor need only show similarities in the charged and uncharged crimes. Yet, these similarities prove only that the defendant acted in conformity with his character to commit similar acts. This analysis allows the prosecution to skip the intermediate-inference requirement and instead point to one or two similarities as proof that the second act must have occurred. In other words, the prosecutor now may work backwards and argue that, where there are similarities, there is a plan and, therefore, the other acts evidence proves defendant committed the instant crime. This logic has never been adopted, and it appears this leap is now made simply to convict a reprehensible defendant. The proper rule would follow well-established principles of evidence that require a showing that the other acts evidence is being presented to show something other than propensity to commit the crime.

This new rule removes the prosecutor's burden of weaving a logical thread linking the prior act to the ultimate inference. Under the California rule adopted by the majority, to establish a common plan, the common features had to indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan did not need to be distinctive. There is no requirement that the prosecutor show a permissible intermediate inference to prove any material fact. Similarities instantly show a plan, and use of a plan shows that the defendant committed the crime at issue. However, even under its new rule, the majority has shown nothing to indicate that the common features of the charged and uncharged crimes indicated the existence of a plan rather than a series of similar spontaneous acts. Rather, the facts indicate that the defendant spontaneously took advantage of an opportunity to rape his daughter while they were alone in the house. No facts show that he manipulated the situation in order to get his daughter alone in the house as part of a plan to later attack her. The threat that she would break up the family appears to have been an afterthought to

cover up the crime after it occurred rather than part of an overall common plan to commit csc I. Finally, no facts link the prior acts against the defendant's stepdaughter to a plan to rape the defendant's daughter ten years later.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Judith B. Ketchum*, Assistant Prosecuting Attorney, for the people.

*Martin J. Beres* for the defendant-appellee.

Amici Curiae:

*John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for Wayne County Prosecuting Attorney.

*Gentry Law Offices, P.C.* (by *Kevin S. Gentry*), and *Willey & Chamberlain* (by *Raymond E. Beckering, III*) for Criminal Defense Attorneys of Michigan.

*Brian L. Mackie*, President, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow*, Chief Appellate Attorney, for Prosecuting Attorneys Association of Michigan.

---

AFTER REMAND

CORRIGAN, J. We granted leave in this criminal sexual conduct case arising from defendant's alleged sexual assault of his thirteen-year-old daughter to consider whether the trial court abused its discretion in admitting evidence that defendant sexually assaulted his

former stepdaughter[1] and that an order existed prohibiting defendant from having contact with children
under the age of seventeen. We conclude that the trial
court did not abuse its discretion in admitting the evidence. We therefore reverse the decision of the Court
of Appeals, and remand this case to the Court of
Appeals for consideration of defendant's remaining
arguments.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The complainant alleged that defendant sexually
assaulted her in late September 1994. She testified
that she and defendant were alone in the family home
in the afternoon. Defendant began "acting . . .
weird" and left the living room, where the complainant was watching television. He returned after removing his t-shirt. He sat next to the complainant and
began rubbing her leg. He then stood up, locked the
front door, turned off the television, and unplugged
the telephone. The complainant attempted to leave
through the back door, but defendant led her by the
arm back into the living room.

The complainant testified that defendant pushed
her to the ground and, while holding her down,
removed her clothes. Defendant then had sexual
intercourse with the complainant. After the assault,
defendant told the complainant that if she reported
the incident to her mother, her mother would "be

---

[1] Defendant's former stepdaughter is the complainant's half sister. Their
mother divorced defendant in 1985, nine years before the incident underlying this case. Defendant's alleged abuse of his former stepdaughter
occurred before the divorce. Therefore, for ease of reference, we will simply refer to defendant's former stepdaughter as his stepdaughter.

really upset with [her] for breaking her family up again . . . ." The complainant, however, told a friend about the assault approximately two weeks later. That disclosure led to a Department of Social Services investigation, and ultimately prompted a prosecutor to charge defendant with first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2).

The prosecution moved before trial under MRE 404(b) to admit evidence that defendant had repeatedly sexually assaulted his stepdaughter. The prosecution argued at the hearing on the pretrial motion that the evidence would show defendant's motive and intent, and show the absence of mistake. The trial court tentatively admitted the evidence on the ground that it demonstrated defendant's intent, but requested that defendant's stepdaughter testify outside the presence of the jury before the court would make a final ruling on the admissibility of the evidence.

At trial, defendant's stepdaughter testified outside the presence of the jury that defendant sexually abused her during the period beginning when she was in kindergarten and ending in 1985, when she was in the seventh grade. The abuse stopped because defendant "went away." The stepdaughter testified that defendant performed oral sex on her three to seven times weekly during the period. She also recalled one incident during which defendant had her lay on her side and he placed his penis between her legs. She recalled another incident during which defendant's daughters from a prior marriage[2] were at the family home for the weekend. The stepdaughter

---

[2] Defendant has two daughters from his first marriage. He married the complainant's mother in 1978. They have three children together. They divorced in 1985.

testified that, as the three girls slept on the living
room floor, defendant performed oral sex on her. She
heard defendant performing oral sex on the other
girls. The stepdaughter testified that defendant
instructed her not to tell anyone about his conduct
because "it would hurt the family, that mom would be
mad at [defendant and her]."

In argument, the prosecution stressed the similari-
ties between the charged incident and the abuse of
the stepdaughter. The prosecution argued that the evi-
dence was relevant to show the absence of mistake,
to support the complainant's credibility, and to aid
the jurors in their evaluation of the evidence by dem-
onstrating that an adult can be sexually attracted to,
and actually accomplish a sex act with, a child.

The trial court admitted the evidence, reasoning as
follows:

> Here, I think the evidence tends to show that the Defen-
> dant has committed other wrongful acts involving a child,
> or a juvenile, who was a member of the same household,
> which is the exact situation we have in the allegations in
> this trial.
>
> Furthermore, we have the Defendant indicating that that
> conduct should not be reported for fear of breaking up the
> family or getting people in trouble. And, I think that is all
> consistent with the—the way in which he is alleged to have
> engaged in sex or sexual penetration in this case.
>
> Therefore, I think it is, indeed, relevant, particularly
> where the Defense is a general denial.
>
> Therefore, I believe it is offered for a proper purpose.
>
> The second facet which I must consider is whether it is
> relevant. In light of the general denial I think it is relevant.
>
> Third, whether the probative value is substantially out-
> weighed by unfair prejudice under MRE 403. I find that it—
> it is not, in light of the testimony presented here today, par-
> ticularly because I will give a limiting instruction as pro-

vided for in [People v VanderVliet, 444 Mich 52; 508 NW2d
114 (1993)] and I will give it not only in advance of [the
stepdaughter's] testimony, but if so requested I will give a
limiting instruction at the conclusion of the trial in my gen-
eral instructions to the jury.

The trial court gave a preliminary instruction to the
jury regarding the stepdaughter's testimony, caution-
ing the jury regarding its consideration of the evi-
dence. The court explained that "the relevancy of this
testimony is to show . . . the Defendant's scheme,
plan or system of how he does certain things. It is
not—you must not conclude, and you cannot con-
clude or infer that because he may have done some-
thing wrong in the past that he, therefore, did some-
thing wrong in the incident for which he is on trial."
The stepdaughter then testified before the jury
regarding the alleged abuse.

The prosecution also moved before trial to admit
evidence of the existence of an order prohibiting
defendant from having contact with children under
the age of seventeen. In the spring of 1994, the parole
board had released defendant after having served
nine years in prison for a 1985 first-degree criminal
sexual conduct conviction arising from his having had
sexual intercourse with one of his daughters from his
first marriage. A condition of defendant's parole was
that he not have contact with anyone under the age
of seventeen.

The prosecution argued that the existence of the
order was relevant because it would explain the com-
plainant's actions after the assault. The prosecution
proposed that witnesses and counsel refer to the con-
dition of parole as a "state agency" order to guard

against the jury learning about the prior conviction. The trial court granted the motion.

The jury convicted defendant of first-degree criminal sexual conduct. The trial court sentenced defendant to a term of life imprisonment. The Court of Appeals reversed defendant's conviction on the ground that the trial court erred in admitting evidence regarding defendant's abuse of his stepdaughter and the existence of the state agency order.[3] The Court construed the trial court's remarks as admitting the evidence for the improper purpose of establishing defendant's propensity to sexually abuse his children. The Court further determined that the evidence was not admissible to prove defendant's common scheme, plan, or system because the only similarity between the acts was that defendant allegedly told each victim that disclosing the abuse would break up the family. The Court concluded that the prejudicial effect of the evidence greatly outweighed its probative value.

Regarding the state agency order, the Court of Appeals held that the unfair prejudice resulting from the evidence substantially outweighed its probative value. It further concluded that the evidence likely misled the jury and confused the issues. The Court reasoned that the jury likely drew a connection between evidence that defendant had been separated from his family for ten years, a state agency had determined that defendant posed a risk to children, and defendant had molested his stepdaughter. The evidence, the Court concluded, seriously prejudiced defendant by informing the jury that defendant could not be trusted near his own children. The Court

---

[3] 223 Mich App 530; 566 NW2d 677 (1997).

determined that the probative value of the evidence did not justify the prejudicial testimony because the reason for the complainant's delay in reporting the assault was not an issue at trial and defense counsel did not argue that the delay affected the complainant's credibility. Further, the Court reasoned, the evidence was not necessary to explain defendant's alleged threat because, if the police believed the complainant's accusation, the family would have been separated regardless of the terms of defendant's parole.

The Court of Appeals determined that the trial court's errors were not harmless. It rejected, however, defendant's claim that the prosecution's failure to specify the exact date of the offense in the information denied him due process of law. The Court declined to address defendant's remaining arguments in light of its decision to reverse and remand for a new trial.

The prosecution applied for leave to appeal to this Court. We initially held the application in abeyance for *People v Starr*, 457 Mich 490; 577 NW2d 673 (1998). After deciding *Starr*, we remanded this case to the Court of Appeals for reconsideration in light of *Starr, supra,* and *People v Crawford*, 458 Mich 376; 582 NW2d 785 (1998). 459 Mich 924 (1998).

On remand, the Court of Appeals reaffirmed its prior decision.[4] The Court concluded that *Crawford* supported its prior decision because defendant's alleged abuse of his stepdaughter was "substantially dissimilar" from the charged conduct. 236 Mich App 9. On examination of *Starr, supra,* the Court deter-

---

[4] 236 Mich App 1; 600 NW2d 98 (1999).

mined that *Starr* merely emphasized the third prong
of *People v VanderVliet*, 444 Mich 52; 508 NW2d 114
(1993). The Court then concluded that it had prop-
erly applied *VanderVliet* in its prior opinion. Regard-
ing the "agency order" evidence, the Court observed
that it "implied that defendant was on parole at the
time of the present offense," and concluded that the
evidence was not relevant to any issue in the case.
236 Mich App 11. The Court alternatively held that
the probative value of the evidence, if any, was sub-
stantially outweighed by the danger of unfair
prejudice.

Judge WHITBECK dissented. The dissent criticized
the Court of Appeals majority for relying too heavily
on a similar acts rationale because MRE 404(b) does
not require a high level of similarity. The dissent rea-
soned that defendant's intent and alleged sexual
attraction to children, while not directly relevant,
were arguably part of a "logical thread" linking the
other acts to the ultimate inference—that the charged
act actually occurred. It further determined that the
evidence was probative of the issues of absence of
mistake and the complainant's credibility. Regarding
the agency order, the dissent reviewed the trial
court's determination of relevancy by considering the
information available to the trial court at the time it
ruled on the prosecution's motion. The dissent con-
cluded that, at that time, the prosecution did not
know that defense counsel would not emphasize the
complainant's delay in reporting the assault. The dis-
sent further concluded that, weighing unfair prejudice
against the probative value of the evidence, the scales
tipped toward admission.

We granted the prosecution's application for leave to appeal. 461 Mich 896 (1999).

## II. EVIDENCE OF DEFENDANT'S ABUSE
### OF HIS STEPDAUGHTER

We conclude that the trial court did not abuse its discretion in admitting evidence concerning defendant's alleged abuse of his stepdaughter.

### A. MRE 404(b)

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *VanderVliet, supra* at 74-75, we adopted the approach to other acts evidence enunciated by the United States Supreme Court in *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988). That approach employs the evidentiary safeguards already present in the rules of evidence. First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a " 'determination must be made whether the danger of undue

prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403.' " *VanderVliet, supra* at 75, quoting advisory committee notes to FRE 404(b). Finally, the trial court, upon request, may provide a limiting instruction under MRE 105.

The *VanderVliet* analytical framework reflects the theory of multiple admissibility on which MRE 404(b) is founded. MRE 404(b)(1) does not require exclusion of otherwise admissible evidence. Rather, the first sentence of MRE 404(b)(1) reiterates the general rule, embodied in MRE 404(a) and MRE 405, prohibiting the *use* of evidence of specific acts to prove a person's character to show that the person acted in conformity with character on a particular occasion. The second sentence of MRE 404(b)(1) then emphasizes that this prohibition does not preclude using the evidence for other relevant purposes. MRE 404(b)(1) lists some of the permissible uses. The list is not, however, exhaustive. MRE 404(b)(1) thus reiterates that, under MRE 402, all relevant evidence *is* admissible, except as otherwise provided by the United States and Michigan Constitutions and other rules. That our Rules of Evidence preclude the use of evidence for one purpose simply does not render the evidence inadmissible for other purposes. Rather, the evidence is admissible for a proper purpose, subject to a limiting instruction under MRE 105.

Under *VanderVliet*, the trial court's initial determination in deciding whether to admit other acts evidence is one of relevance. MRE 401 defines relevant evidence as "evidence having any tendency to make

the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence thus is evidence that is material (related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence). *People v Mills*, 450 Mich 61, 66-68; 537 NW2d 909 (1995). Materiality, however, "does not mean that the evidence must be directed at an element of a crime or an applicable defense." *Id.* at 67-68. A material fact is one that is " 'in issue' in the sense that it is within the range of litigated matters in controversy." *Id.* at 68, quoting *United States v Dunn*, 805 F2d 1275, 1281 (CA 6, 1986).[5]

---

[5] In *Crawford, supra* at 388, this Court stated that "[i]n order to ensure the defendant's right to a fair trial, courts must vigilantly weed out character evidence that is disguised as something else. The logical relationship between the proffered evidence and the ultimate fact sought to be proven must be closely scrutinized." Although strongly worded, one should not construe *Crawford* as creating a heightened standard of relevance for other acts evidence. Rather, *Crawford* recognizes that determining the admissibility of other acts evidence is often difficult. The trial court must ascertain whether the proffered theories of logical relevance apply under the circumstances of a particular case.

After *VanderVliet*, we amended MRE 404(b)(2) to assist the trial court in its evidentiary ruling. That rule provides:

The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

This case reveals that, even with this notice provision, the trial court's task is not an easy one.

On determining that the evidence is admissible under a permissible theory of logical relevance, the trial court must consider whether to exclude the evidence nonetheless under MRE 403. The trial court may exclude the admissible evidence of other acts "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

In *VanderVliet, supra* at 90-91, we encouraged trial courts to utilize a flexible approach for determining admissibility to facilitate the informed exercise of their discretion under MRE 403. We explained:

> The probative value of other acts evidence and its true potential for prejudice is often unclear until the proofs are actually presented. Other acts evidence relevant to elements technically at issue because of a not guilty plea may initially have only marginal probative value in comparison to the potential prejudice generated by the evidence. Where, for example, the real issue contested is whether the act was committed, and the prosecution's claim is that the disputed issue of mens rea requires admission of other acts evidence in the case in chief, the trial court should defer the ruling on admissibility where the jury would be likely to determine criminal state of mind from the doing of the act, allowing admission in the case in chief only if the evidence of other acts meets the standards for admission as proof of actus reus. On the other hand, in some cases the cross-examination of witnesses in the case in chief may make it clear that the intent with which the act was committed is likely to be a matter of significant concern to the factfinder. The prosecutor should not be allowed to introduce other acts evidence only because it is technically relevant, nor should the defendant be allowed to interdict proofs that are highly probative of a truly contested issue. By waiting to determine the admissibility of other acts evidence relevant

to an element only technically at issue, the trial court is able to forestall gamesmanship by the parties and insure the admission of evidence that possesses significant probative value. The ultimate goal is an enlightened basis for the trial court's conclusion of relevance and for the attendant inquiry under MRE 403.

We again encourage trial courts to use this approach.

### B. RELEVANCE

In this case, the prosecution argues that the other acts evidence was admissible to show defendant's scheme, plan, or system in doing an act, to show defendant's motive and intent, to show an absence of mistake, and to bolster the complainant's credibility.[6]

---

[6] The prosecution argued in the trial court that the other acts evidence would show defendant's motive and intent, show the absence of mistake, demonstrate the possibility that adults can be sexually attracted to, and engage in sex acts with, children, and bolster the complainant's credibility. Under the first leg of *VanderVliet*, the prosecution must "offer" the evidence for a proper purpose. Here, the prosecution clearly offered the evidence for permissible purposes. The key question is whether, under the circumstances of this case, the evidence was relevant under those theories of logical relevance.

In *Crawford*, *supra* at 386, n 6, this Court emphasized that the prosecution bears the burden of articulating a proper purpose for the admission of prior acts evidence under MRE 404(b). *Crawford*, however, should not be read as imposing a heightened requirement for establishing the theory of admissibility or suggesting that the prosecution's failure to identify at trial the purpose that supports admissibility requires reversal. The requirement under MRE 404(b)(2) that the prosecution provide notice of the general nature of the other acts evidence and rationale for admitting the evidence is designed to ensure that the defendant is aware of the evidence and to provide an enlightened basis for the trial court's determination of relevance and decision whether to exclude the evidence under MRE 403. See *VanderVliet*, *supra* at 89, n 51. The prosecution's recitation of purposes at trial does not restrict appellate courts in reviewing a trial court's decision to admit the evidence.

We simply do not share the dissent's view that the failure of the prosecution to speak the words "plan, scheme, or system" requires reversal of defendant's conviction. First, in this case, one could arguably construe the prosecution's emphasis on the similarities between the charged and

We review the trial court's evidentiary rulings under MRE 401 and MRE 403 for an abuse of discretion. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995); see *Crawford, supra* at 383; *Starr, supra* at 494.

As we have often stated, a defendant's general denial places all the elements of the charge at issue. *Starr, supra* at 501; *VanderVliet, supra* at 78. That the prosecution has identified a permissible theory of admissibility and the defendant has entered a general denial, however, does not automatically render the other acts evidence relevant in a particular case. The trial court must still determine whether the evidence, under a proper theory, has a tendency to make the existence of a fact of consequence in the case more or less probable than it would be without the evidence. MRE 401; *Mills, supra* at 66-68.

We recognize that determining relevance is often difficult because it necessarily involves drawing subtle distinctions. Although we sympathize with the trial courts in their struggle with evidentiary rulings in sexual abuse cases involving children, our evidentiary rules require that trial courts engage in the inquiry. Unlike the courts of other jurisdictions, we have never adopted the so-called "lustful disposition" rule,[7]

---

uncharged acts as raising this theory of logical relevance. More importantly, however, the trial court admitted the evidence under this theory and specifically instructed the jury to limit its consideration of the evidence to showing defendant's scheme, plan, or system in doing an act. To reverse a conviction under these circumstances would do little to further the ends of justice.

[7] Reed, *Reading Gaol revisited: Admission of uncharged misconduct evidence in sex offender cases*, 21 Am J Crim L 127, 192 (1993), explains that courts following the lustful disposition rule in sex offense cases "allow uncharged similar sexual misconduct evidence to be used by the trier of fact in determining the defendant's lustful disposition by circum-

which allows the use of other acts for propensity pur-
poses in sex offense cases. Nor do the Michigan
Rules of Evidence contain a rule analogous to FRE
414.[8] Under our rules of evidence, the trial court must
make an individualized determination of relevance in
each case. Accordingly, we examine the prosecution's
theories of logical relevance in this case.

### 1. SCHEME, PLAN, OR SYSTEM

In this case, the trial court apparently held that the
evidence was relevant under a theory that it showed
defendant's plan, scheme, or system in doing an act.
In *People v Engelman*, 434 Mich 204; 453 NW2d 656
(1990), this Court rejected the notion that use of

---

stantial proof of a general character trait, followed by an inference from
that inductively proved general character trait that the defendant commit-
ted the crime charged in the indictment." It appears that the courts of
twenty-nine states employ the rule to admit sexual misconduct evidence.
*Id.* at 189.

[8] FRE 414(a) provides that "[i]n a criminal case in which the defendant
is accused of an offense of child molestation, evidence of the defendant's
commission of another offense or offenses of child molestation is admissi-
ble, and may be considered for its bearing on any matter to which it is rel-
evant." Before promulgating FRE 413, 414, and 415, Congress considered
the policy questions underlying the proposed rules and resolved those
questions in favor of allowing the use of evidence of similar acts for pro-
pensity purposes in sexual assault and child molestation cases. See 140
Cong Rec H8991 and 140 Cong Rec S12990 (statements of Representative
Susan Molinari and Senator Robert Dole, the respective principal House
and Senate sponsors, referencing the section-by-section analysis accompa-
nying § 801 of S 635, 137 Cong Rec S3238-3242, and incorporating the text
of an address presented by senior counsel David J. Karp of the Office of
Policy Development of the United States Department of Justice (Karp,
*Evidence of propensity and probability in sex offense cases and other
cases*, 70 Chi-Kent L R 15 [1994]). Only after a thorough debate over the
underlying policy questions, using our notice and public comment proce-
dure, would we consider adopting evidentiary rules that would allow the
use of other acts for propensity purposes in sexual assault and child
molestation cases.

other acts evidence is limited to proof of identity or intent. We held that evidence of other instances of sexual misconduct that establish a scheme, plan, or system may be material in the sense that the evidence proves that the charged act was committed.

*Engelman, supra* at 220-221, explained:

> If it could be shown in this case that defendant did indeed follow a common scheme or plan in committing such acts against young children, it would defy logic to limit the use of that evidence to proof of identity or state of mind. The former will never be in dispute where the defendant and the victim know each other, and the defendant's state of mind is not an element of many of the offenses set forth in the criminal sexual conduct act. Yet, in many cases such evidence might be not only relevant to the determination of defendant's guilt or innocence, but also material in the sense required by [*People v Golochowicz*, 413 Mich 298; 319 NW2d 518 (1982)], as proof that the act was committed. As explained in 2 Wigmore, Evidence (Chadbourn rev), § 304, p 249, "[w]hen the very doing of the act charged is yet to be proved, one of the evidential facts receivable is the person's design or plan to do it . . . ."

*Engelman,* however, provided little guidance for lower courts in determining the existence of a plan, scheme, or system. This Court suggested that to establish a "true plan," the evidence must show " 'that the defendant in fact and in mind formed a plan including the charged and uncharged crimes as stages in the plan's execution.' " *Id.* at 221, quoting Imwinkelried, Uncharged Misconduct Evidence, § 3:21, p 53. We also quoted a passage from 1 Wharton, Criminal Evidence (14th ed), § 186, pp 786-787, stating that evidence " 'is admissible when it tends to establish a common plan, design, or scheme embracing a series of crimes, including the crime charged, so

related to each other that proof of one tends to prove the other.'" *Engelman, supra* at 221, n 25.

*Engelman* thus focused on one of the two situations that fall within this theory of logical relevance. The situation identified in *Engelman* is where the charged and uncharged acts are constituent parts of a plan in which each act is a piece of the larger plan. That situation is not present in this case. Instead, this case is one where the defendant allegedly "devis[ed] a plan and us[ed] it repeatedly to perpetrate separate but very similar crimes." *State v Lough,* 125 Wash 2d 847, 855; 889 P2d 487 (1995).[9]

Today, we clarify that evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system.[10] See *People v Ewoldt,* 7 Cal

---

[9] Unlike the dissent, we do not read *Engelman* as rejecting the notion that this theory of logical relevance can apply under circumstances that do not establish a "true plan." In *Engelman,* the defendant was convicted of third-degree criminal sexual conduct involving the sexual penetration of a fifteen-year-old boy. The trial court admitted a photograph of the nude defendant with a minor female who was exposing herself. Without testimony from the girl regarding the circumstances surrounding the taking of the photograph, this Court simply could not infer the existence of a common plan, scheme, or system used by the defendant to commit acts of sexual penetration.

Further, the dissent's reading of *Engelman* would conflict with *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), in which this Court held that evidence that the defendant sexually assaulted other women in a similar manner was properly admitted to show the defendant's plan or scheme. Although this Court determined that the evidence was probative of the issue of consent, it clearly viewed the plan, scheme, or system theory as encompassing situations where the charged and uncharged acts are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system.

[10] Contrary to the assertion of the dissent, we have identified a proper intermediate inference that is probative of whether the charged act was

4th 380; 867 P2d 757 (1994). Logical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot.

General similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts. 2 Wigmore, Evidence (Chadbourn rev), § 304, p 249, explains:

> But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing intent . . . . The object here is not merely to negative an innocent intent at the time of the act charged, but to prove a preexisting design, system, plan, or scheme, directed forwards to the doing of that act. In the former case (of intent) the attempt is merely to negative the innocent state of mind at the time of the act charged; in the present case the effort is to establish a definite prior design or system which included the doing of the act charged as part of its consummation. In the former case, the result is to give a complexion to a conceded act, and ends with that; in the present case, the result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed.
>
> The added element, then, must be, not merely a similarity in the results, but *such a concurrence of common features*

committed—the existence of a common plan, scheme, or system in doing an act. The jury is not required to draw an inference regarding the defendant's character. Rather, the jury is asked to infer the existence of a common system and consider evidence that the defendant used that system in committing the charged act as proof that the charged act occurred. The logical relevance of the evidence is based on the system, as shown through the similarities between the charged and uncharged acts, rather than on defendant's character, as shown by the uncharged act. In the end, therefore, the dissent simply does not recognize the existence of a common scheme or system as a permissible intermediate inference. Both *Engelman* and MRE 404(b)(1) clearly reject that view.

*that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.* [Emphasis in original.]

Wigmore, *supra* at 250-251, expounds on the common features between the uncharged and charged act necessary to support an inference of a plan, scheme, or system:

[T]he difference between requiring *similarity*, for acts negativing innocent intent, and requiring *common features indicating common design*, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity. . . .

The clue to the difference is best gained by remembering that in the one class of cases the act charged is assumed as done, and the mind asks only for something that will negative innocent intent; and the mere prior occurrence of an act similar in its gross features—i.e., the same doer, and the same sort of act, but not necessarily the same mode of acting nor the same sufferer—may suffice for that purpose. But where the very act is the object of proof, and is desired to be inferred from a plan or system, the combination of common features that will suggest a common plan as their explanation involves so much higher a grade of similarity as to constitute a substantially new and distinct test. [Emphasis in original.]

In *Ewoldt, supra* at 402-403, the Supreme Court of California provided guidance for ascertaining the existence of a common plan used by the defendant to commit the charged and uncharged acts. As *Ewoldt* explains, the necessary degree of similarity is greater than that needed to prove intent, but less than that needed to prove identity.

To establish the existence of a common design or plan, the common features must indicate the existence of a plan

rather than a series of similar spontaneous acts, but the
plan thus revealed need not be distinctive or unusual. For
example, evidence that a search of the residence of a per-
son suspected of rape produced a written plan to invite the
victim to his residence and, once alone, to force her to
engage in sexual intercourse would be highly relevant even
if the plan lacked originality. In the same manner, evidence
that the defendant has committed uncharged criminal acts
that are similar to the charged offense may be relevant if
these acts demonstrate circumstantially that the defendant
committed the charged offense pursuant to the same design
or plan he or she used in committing the uncharged acts.
Unlike evidence of uncharged acts used to prove identity,
the plan need not be unusual or distinctive; it need only
exist to support the inference that the defendant employed
that plan in committing the charged offense. [*Ewoldt, supra*
at 403.]

In this case, we conclude that the trial court did
not abuse its discretion in determining that defen-
dant's alleged assault of the complainant and alleged
abuse of his stepdaughter shared sufficient common
features to infer a plan, scheme, or system to do the
acts. The charged and uncharged acts contained com-
mon features beyond mere commission of acts of sex-
ual abuse. Defendant and the alleged victims had a
father-daughter relationship. The victims were of sim-
ilar age at the time of the abuse. Defendant allegedly
played on his daughters' fear of breaking up the fam-
ily to silence them. One could infer from these com-
mon features that defendant had a system that
involved taking advantage of the parent-child relation-
ship, particularly his control over his daughters, to
perpetrate abuse.[11]

---

[11] That these facts also prove the elements of a criminal offense is not
pertinent to our inquiry. The question is whether the circumstances sur-

We acknowledge that the uncharged and charged acts were dissimilar in many respects. Defendant's stepdaughter testified that, over the course of seven or eight years beginning when she was in kindergarten, defendant performed oral sex on her three to seven times weekly. The abuse took place at night in her bedroom. She recalled one incident when she was in the fifth grade during which defendant had her lay on her side and he placed his penis between her legs. The charged act in this case, in contrast, was the only time defendant assaulted the complainant. The complainant did not allege prolonged sexual abuse. The incident occurred during a weekday afternoon, not at night while the complainant slept. The sexual act was intercourse, not oral sex. On the basis of this evidence, one could infer that the uncharged and charged acts involved different modes of acting, both in terms of sexual acts and the manner in which defendant allegedly perpetrated the abuse.

This case thus is one in which reasonable persons could disagree on whether the charged and uncharged acts contained sufficient common features to infer the existence of a common system used by defendant in committing the acts. As we have often observed, the trial court's decision on a close evidentiary question such as this one ordinarily cannot be an abuse of discretion. E.g., *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998); *Bahoda, supra* at 289. We therefore conclude that the trial court did not abuse its discretion in determining, under the circum-

---

rounding the charged and other acts support an inference of a common system.

stances of this case, that the evidence was admissible under this theory of logical relevance.

The prosecution next argues that the evidence was admissible to prove defendant's motive and intent. "A motive is the inducement for doing some act; it gives birth to a purpose." *People v Kuhn*, 232 Mich 310, 312; 205 NW 188 (1925). Evidence of the defendant's motive to commit the charged crime lends itself to three theories of logical relevance: (1) identity; (2) actus reus, and (3) mens rea. Imwinkelried, *supra*, §§ 3:15, 4:19, and 5:35.

In this case, the prosecution argues that defendant's motive was to have sex with young girls who were related to him and that the existence of this motive, as evidenced by other sexual misconduct with his stepdaughter, tended to prove that the sexual assault alleged by the complainant actually occurred. This proffered purpose is undistinguishable from the so-called "lustful disposition" rule. However, as stated, this Court has never adopted that rule, and we decline to do so here. To accept the prosecutor's theory of logical relevance would allow use of the evidence for the prohibited purpose of proving defendant's character to show that he acted in conformity therewith during the events underlying the charged offense.

We likewise conclude that the evidence was not logically relevant under a theory that it proved defendant's intent. First-degree criminal sexual conduct is a general intent crime. *People v Langworthy*, 416 Mich 630, 645; 331 NW2d 171 (1982). " '[N]o intent is requi-

site other than that evidenced by the doing of the acts constituting the offense.' " *Id.* at 644. In this case, because the charged act was sexual intercourse and accident was not an issue, the evidence was not relevant to prove defendant's general intent.

### 3. ABSENCE OF MISTAKE

We reject the prosecution's argument that the evidence was relevant to show the absence of mistake in the victim's perception of the incident underlying the charges. We agree that the ultimate fact—that sexual penetration occurred—was a fact of consequence at trial. Nevertheless, the thirteen-year-old complainant's perception of the incident, i.e., whether she mistakenly believed that sexual penetration occurred when, in fact, it did not, was not "in issue." The complainant's perception of the incident was not within the range of litigated matters in controversy. *Mills, supra* at 68. "The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." *VanderVliet, supra* at 75. In this case, defendant's theory of defense was not that the complainant mistakenly perceived his actions, but that the entire incident did not take place. We therefore conclude that the evidence was not relevant under a theory of absence of mistake.

### 4. THE COMPLAINANT'S CREDIBILITY

The prosecution lastly argues that the evidence was relevant to bolster the complainant's credibility. In *People DerMartzex*, 390 Mich 410; 213 NW2d 97 (1973), this Court held that evidence of uncharged

acts of sexual misconduct perpetrated by the defendant on the complainant was admissible for the purpose of corroborating the complainant's testimony. In *People v Jones*, 417 Mich 285, 289; 335 NW2d 465 (1983), this Court described the rationale for *DerMartzex, supra,* as follows: "the prior sexual acts between the victim and the defendant were a part of the 'principal transaction' necessary for the jury to weigh the victim's testimony about the principal transaction." In *Jones, supra* at 289-290, this Court held that evidence of sexual acts between the defendant and persons other than the complainant is not relevant to bolster the complainant's credibility because the acts are not part of the principal transaction. Today, as we did in *Engelman, supra* at 222, we decline to reconsider our decision in *Jones.*[12]

### C. MRE 403

We turn to the trial court's determination under MRE 403 because the other act evidence was relevant under a permissible theory of logical relevance. We conclude that the trial court did not abuse its discretion in declining to exclude the evidence under MRE 403. The evidence was admissible to show the actus

---

[12] Our decision in *Starr, supra,* does not call *Jones* into question. In *Starr,* the defendant's theory was that the complainant's mother orchestrated the allegations of sexual abuse to prevent defendant, the complainant's father, from having any contact with the complainant. The testimony of the defendant's half sister that defendant had sexually abused her was relevant to rebut the defendant's allegation of fabrication because it explained why the complainant's mother questioned the complainant about her relationship with the defendant. The half sister's disclosure of the abuse to the mother prompted the mother to question the complainant about possible abuse. *Starr, supra* at 502, quoting *VanderVliet, supra* at 81, concluded that "[w]ithout such evidence, the factfinder would be left with a chronological and conceptual void regarding the events . . . ."

reus of the offense. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

In *VanderVliet, supra* at 81, this Court observed that the MRE 403 determination is "best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony." In this case, the defense contended that the complainant fabricated the entire incident to remove defendant from her life. The evidence was thus probative of a disputed element of the offense—that sexual penetration occurred. Although the potential for prejudice existed, the evidence was probative in showing a system that defendant may have used to sexually assault his daughters, and consequently, in rebutting defendant's claim of fabrication. Under these circumstances, the trial court did not abuse its discretion in determining that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence.

### III. AGENCY ORDER

We agree with the prosecution that the Court of Appeals erred in concluding that the trial court abused its discretion in admitting evidence of the existence of the agency order. In this case, the prosecution did not offer the evidence for the purpose of demonstrating defendant's bad character by means of an inference from his having violated the order. The evidence was instead clearly relevant because it explained the complainant's testimony regarding the threat used by defendant in an effort to secure her silence. The complainant testified that defendant told her that if she reported the incident to her mother,

her mother would "be really upset with [her] for breaking her family up again . . . ." Evidence regarding the existence of an agency order that effectively separated the family filled a conceptual void regarding the events by providing information that the jury needed to understand defendant's reference to breaking up the family *again*. See *Starr, supra* at 502.

We conclude that the evidence was also relevant to the issue of the complainant's delay in reporting the assault, even though defendant ultimately chose not to vigorously argue that the delay signified that the assault did not occur. Materiality "does not mean that the evidence must be directed at an element of a crime or an applicable defense." *Mills, supra* at 67-68. Rather, a material fact is one that is " 'in issue' in the sense that it is within the range of litigated matters in controversy." *Id.* at 68, quoting *United States v Dunn, supra* at 1281. Evidence regarding the existence of the agency order shed light on the family secret that possibly caused the complainant to hesitate before reporting the abuse for fear that the report would get her parents in trouble. Therefore, viewed from the trial court's perspective at the time it ruled on the prosecution's motion, the evidence was admissible to explain the complainant's delay in reporting the assault in order to rebut defendant's claim that the complainant fabricated the allegation of a sexual assault.

We further conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. We disagree with the Court of Appeals that the evidence implied that defendant was on parole at the time of the instant offense. The trial court took great care to

reduce the likelihood that the jury would draw an unfairly prejudicial inference from the evidence by precluding any reference to the origins of the order. Under these circumstances, we conclude that the trial court did not abuse its discretion in admitting the evidence.

## IV. CONCLUSION

We hold that the trial court did not abuse its discretion in admitting evidence that defendant sexually assaulted his stepdaughter and that an agency order existed prohibiting defendant from having contact with children under the age of seventeen. Accordingly, we reverse the decision of the Court of Appeals, and remand this case to the Court of Appeals for consideration of defendant's remaining arguments.

WEAVER, C.J., and TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, J.

CAVANAGH, J. (*dissenting*). I agree with the majority's rejection of motive, intent, absence of mistake, and bolstering the victim's credibility as proper MRE 404(b) purposes under the facts of this case. However, I dissent because defendant's scheme, plan, or system in doing things was not a purpose offered or articulated at trial as required by *VanderVliet,*[1] *Crawford,*[2] and *Starr.*[3] Also, the majority fails to show that the evidence of a common plan in this case is relevant apart from its tendency to show the defendant

---

[1] *People v VanderVliet,* 444 Mich 52; 508 NW2d 114 (1993).

[2] *People v Crawford,* 458 Mich 376; 582 NW2d 785 (1998).

[3] *People v Starr,* 457 Mich 490; 577 NW2d 673 (1998).

committed the instant crime because he acted in conformity with his criminal disposition. Finally, the majority errs in creating a rule that any similarities among successive crimes proves a plan, and thus proves that the charged offense was committed.

### PROPER PURPOSE

*VanderVliet* teaches that something more than a mechanical recitation of MRE 404(b) list of "proper purposes" is required in order to move forward to the remaining three legs of its test.[4] A determination must be made that the purpose claimed is relevant to an issue other than propensity. This protects against the introduction of extrinsic act evidence when that evidence is offered solely to prove character. 444 Mich 74. In this determination, relevance is intertwined with whether a proper purpose was presented. In order to provide a proper purpose under 404(b), the evidence must be relevant to a material fact or issue in the case. That is, the purpose for which the 404(b) evidence is offered must relate to an issue of consequence other than defendant's arguably MRE 401 relevant propensity to commit certain bad acts. Whether the purpose is proper is a fact-specific, case-by-case determination.

---

[4] The *VanderVliet* test provides that, first, evidence must be relevant to an issue other than propensity under Rule 404(b); second, the evidence must be relevant under Rule 402 as enforced through Rule 104(b) to an issue of fact or consequence at trial; third, the trial court should employ a balancing test under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and, fourth, the trial court, upon request, may provide a limiting instruction under Rule 105.

It is undisputed that the prosecution did not present the other acts evidence for a proper purpose.[5] At trial, the prosecution presented the evidence to show defendant's motive and intent, his absence of mistake, to demonstrate the possibility that adults can be sexually attracted to children, and to bolster the complainant's credibility. The trial court made a conclusory determination that the evidence was relevant and admissible because defendant had committed a similar act in the past. In its ruling, the court did not state the purpose on which it relied. It merely stated that the evidence was presented for a proper purpose. When instructing the jury, the trial court warned that the evidence was proper only to show defendant's scheme, plan, or system in doing certain things.

Each of the prosecution's arguably plausible[6] purposes are properly rejected by the majority. However, the majority has gone one step further, and makes a determination whether "scheme, plan, or system" is a

---

[5] It is not solely the prosecutor's failure to recite magic words that requires reversal in this case. It is the failure under our case law and MRE 404(b)(1) and (2) to provide a legitimate rationale for admitting the evidence. The majority argues that pointing out similarities between an uncharged and charged act satisfies the prosecutor's burden to articulate and provide rationale for admission of the evidence. In future cases, criminal defendants should cite this rationale to ensure review of issues not preserved at trial. The majority also argues that the trial court admitted the evidence under a "scheme, plan, or system" theory. The record is void of support for this assertion. The court simply stated that the evidence was relevant because it was similar. Finally, instructing the jury that it should use the evidence to support a showing that this is "how he [defendant] does certain things" fails to cure the error.

[6] As the amicus curiae Criminal Defense Attorneys of Michigan brief points out, the suggestion that other acts evidence is relevant to show that adults can be sexually attracted to children is nothing more than an ingenious disguise of an improper propensity purpose. No rational juror in our society today would doubt that an adult could be sexually attracted to a child. The fact that the majority chose not to address the question evidences its agreement that this is implausible.

proper purpose under these facts. Apparently, this issue was preserved for our review because the trial court instructions to the jury recited these magic words.

Judge WHITBECK's dissent below properly recognized that the initial question for the appellate court is whether, under *VanderVliet,* the prosecutor *articulated* a proper purpose *at trial.* 236 Mich App 1, 16; 600 NW2d 98 (1999). It is insufficient for the prosecutor, on appeal, to recite purposes that were articulable at trial. *Id.* Under *VanderVliet,* the prosecutor has the burden of articulating a nonpropensity ground for admission of other acts evidence. It is not enough that a nonpropensity theory might exist if it was not articulated or relied on by the prosecution at trial. This was reiterated in both *Starr* and *Crawford.* See 236 Mich App 17, n 6 (explaining that those cases require that the proper purpose be *offered* or *articulated* by the prosecutor, rather than simply requiring that a proper purpose exists). Moreover, it is not enough that the trial court may have listed or articulated a proper purpose when accepting the evidence. The first leg of *VanderVliet* requires the prosecutor at trial to articulate a proper purpose for admitting the prior acts evidence, it does not look forward to the purposes articulated by the trial court when accepting the evidence.

This view is further supported by this Court's adoption of a procedural safeguard in these cases after *VanderVliet.* MRE 404(b)(2) provides that the prosecution "shall" not only provide pretrial notice of its intent to introduce 404(b) evidence, but it must also provide the rationale, whether or not it is mentioned in 404(b)(1), for admitting the evidence. This require-

ment is consistent with our case law because it requires the prosecutor to do more than simply recite the proper purposes listed in MRE 404(b)(1).

Additionally, as a matter of fairness to the defendant, the prosecutor should not be allowed to list its purposes and rationale at trial, and then grasp for more on appeal when those fail. MRE 404(b)(2) provides the defendant an opportunity to respond to the prosecutor's list of purposes and rationale for admission. If the prosecutor is allowed on appeal to argue that unarticulated purposes existed, we would discourage compliance with this rule.

Judge WHITBECK scoured the record to find any and all arguments showing the prosecution's nonpropensity theories.[7] Scheme, plan, or system was not included in the list. In fact, it was not until the case reached this Court a second time that the "scheme, plan, or system" theory was added by the prosecutor. The prosecutor cites *People v Engelman*, 434 Mich 204, 223, n 27; 453 NW2d 656 (1990), for the proposition that the failure to advance the correct theory of admission does not justify automatic reversal of a conviction. This fails because, first, this was dicta, and, second, Judge WHITBECK correctly noted that the cases relied upon in the *Engelman* footnote do not support the prosecutor's view. Judge WHITBECK stated:

> I first note that *Engelman,* in turn, cites *Templin v Nottawa Twp*, 362 Mich 257; 106 NW2d 825 (1961), and *Plec v Liquor Control Comm*, 322 Mich 691; 34 NW2d 524 (1948) . . . . *Templin,* however, does not deal with an evidentiary rule and stands only for the time-honored proposition that a

---

[7] Judge WHITBECK also noted that the prosecution added "modus operandi," "corpus delicti," and "corroboration" as new theories at the Court of Appeals. 236 Mich App 19-20, n 10.

reviewing court will not disturb the conclusions of a lower
court that reached the right conclusion regardless of the
reasons it cites for reaching that conclusion. *Templin,
supra* at 261. The decision in *Plec* rests on the same
basis . . . . At best, therefore, it seems to me that *Engel-
man* stands for the proposition that the fact that a trial
court may have erred in assigning a proper purpose for
accepting the other acts testimony is not fatal on appeal, *if
a proper purpose existed and was articulated at trial.* I
secondly note that, quite obviously, *Engelman* predated the
Court's adoption of the *VanderVliet* four-legged test and
therefore should not be interpreted as speaking definitively
to the question of an "articulated" versus an "articulable"
purpose with respect to the first leg. [236 Mich App 20, n 10
(emphasis in original).]

After two attempts at the Court of Appeals, and
two attempts at this Court, it appears that the pros-
ecutor has finally articulated a proper purpose under
the majority view. It is apparent that the first leg of
the four-legged test articulated in *VanderVliet* has
been rendered a nullity. That case is left to wobble on
its remaining three legs. From today forward, pros-
ecutors may ignore the requirements of 404(b)(1) and
(2) along with the first requirement of *VanderVliet.*
On appeal, they may list any and all proper purposes
in an attempt to hit the mark with one, or they may
allow the appellate court to find one for them,
thereby affirming a criminal conviction.

Because the prosecutor failed to meet the require-
ments of the first leg of *VanderVliet* and our court
rules regarding character evidence, I would affirm the
decision of the Court of Appeals.

SCHEME, PLAN, OR SYSTEM

As explained, the proper purpose articulated by the
prosecutor must be relevant to a fact in issue. The

majority properly analyzes this requirement in its discussion of the prior bad acts to show defendant's motive, intent, absence of mistake, and bolstering the victim's credibility. However, its analysis of scheme, plan, or system is lacking this requirement.

The majority explains that the proper purpose must be relevant, or material:

> Materiality, however, "does not mean that the evidence must be directed at an element of a crime or an applicable defense." A material fact is one that is " 'in issue' in the sense that it is within the range of litigated matters in controversy." [*Ante*, p 57 (citations omitted).]

In finding that defendant's scheme, plan, or system was material, the majority relies on an interesting interpretation of the *Engelman* dicta. *Ante*, pp 61-62. It is true that other acts evidence is not limited to proving identity or intent. We need not look to *Engelman* to support this statement when 404(b) itself provides a nonexhaustive list of the proper purposes for admitting evidence. However, the propositions surrounding the *Engelman* quote are simply inaccurate. The majority provides that "We [this Court] held that evidence of other instances of sexual misconduct that establish a scheme, plan, or system may be material in the sense that the evidence proves that the charged act was committed." *Ante*, pp 61-62. To the contrary, in *Engelman* we *held* that photographic evidence of the defendant standing nude next to a minor female was inadmissible to show that defendant had a scheme, plan, or system of luring children into his home for sex acts even though defendant had taken nude photos of the victim in that case. 434 Mich 221. The holding was based on a lack of a "true plan." *Id.* The instant majority provides that *Engelman* "sug-

gested" that a true plan required that defendant formed a plan including the charged and uncharged crimes as stages in the plan's execution. *Ante*, pp 62-63. In fact, *Engelman* held that because a true plan was not shown, as defined by Imwinkelried, Uncharged Misconduct Evidence, § 3:21, p 53, and 1 Wharton, Criminal Evidence (14th ed), § 186, pp 786-787, the evidence was inadmissible. 434 Mich 221. Finding no support in our case law,[8] the majority looks to other jurisdictions to add a new theory of logical relevance that will fit within the category of scheme, plan, or system. It relies on *State v Lough*, 125 Wash 2d 847; 889 P2d 487 (1995), and *People v Ewoldt*, 7 Cal 4th 380; 867 P2d 757 (1994). However, the theory derived from those cases does not "clarify" our case law, but instead rejects it.

*Lough* simply followed the *Ewoldt* analysis and its precedent. The *Ewoldt* rule provides that other acts

---

[8] The majority's injection of *People v Oliphant*, 399 Mich 472; 250 NW2d 443 (1976), fails to provide support for its view. First, *Oliphant* was decided before we adopted the requirements of MRE 404(b)(2), *Vander-Vliet*, *Starr*, and *Crawford*. Also, in *Oliphant*, the evidence was material to the issue of consent. In the instant case, the evidence was admitted to prove that the instant offense occurred. As *Engelman* explains:

"When the prosecutor offers uncharged misconduct to prove the commission of the actus reus, the judge should very carefully scrutinize the prosecutor's theory of logical relevance. This is the theory of relevance in which it is easiest for the prosecutor to slip into improper character reasoning. Since the ultimate inference is conduct, this theory places the greatest strain on the prohibition in the first sentence of Rule 404(b). The courts are reluctant to admit uncharged misconduct to prove the actus reus, and that reluctance is well-founded. If the prosecutor wants to avoid Rule 404(b), the prosecutor must persuade the judge that the prosecutor is invoking an intermediate inference other than the defendant's subjective character." [434 Mich 215-216 (citations omitted).]

Of course, after today, the prosecutor need not bother with these unduly strict requirements, and may introduce evidence of prior acts by pointing to similarities between the prior act and the offense charged.

evidence is relevant to prove that the charged act was committed if it is sufficiently similar to support the inference of a common design or plan. 7 Cal 4th 402. This view was rejected in *Engelman,* where this Court explained that when the ultimate fact to be proved through the other acts evidence is that the criminal act took place, the question becomes whether the evidence offered tends to establish some intermediate inference, other than the improper inference, which is probative of the ultimate issue in the case—the commission of the act. 434 Mich 217. In other words, there must be a proper intermediate inference established by the other acts evidence that is probative of whether the crime occurred. *Id.* at 218.

The majority has provided no intermediate inference.[9] Instead, it adopts the rule that the prosecutor need only show similarities in the charged and uncharged crimes. These similarities prove only that defendant acted in conformity with his character to commit similar acts. This analysis allows the prosecution to skip the intermediate inference requirement and instead point to one or two similarities as proof that the second act must have occurred. In other words, the prosecutor may now work backwards and argue that, where there are similarities, there is a plan, and therefore the other acts evidence proves defendant committed the instant crime. This logic has never been adopted, and it appears this leap is now made simply to convict a reprehensible defendant. The proper rule would follow well-established principles of evidence that require a showing that the

---

[9] The majority's explanation, that the "common system" theory itself *is its own* intermediate inference, is vacuous, but would fit quite well into a work of Lewis Carroll.

other acts evidence is being presented to show some-
thing other than propensity to commit the crime.
*Crawford, supra* at 390.

SUFFICIENT SIMILARITY

The majority's new rule removes the prosecutor's
burden of weaving a logical thread linking the prior
act to the ultimate inference. Rather than follow our
established law in this area, it adopts California's "suf-
ficient similarity" test provided in *Ewoldt.* However,
under the facts of this case, it fails to carry even this
light burden. *Ewoldt* explains that to establish a com-
mon plan, the common features must indicate the
existence of a plan rather than a series of similar
spontaneous acts, but the plan need not be distinc-
tive. *Ewoldt, supra* at 403.

In this case, the majority points to three common
features among the uncharged and charged acts.
First, the alleged victims had a father-daughter rela-
tionship. Second, the victims were of similar age at
the time of the abuse. Third, defendant played on his
daughters' fears of breaking up the family to silence
them. *Ante,* p 66. The problem with such common
features is that they include the very elements of the
uncharged and charged crimes. Defendant was con-
victed of CSC I pursuant to MCL 750.520b(1); MSA
28.788(2)(1). That statute provides that defendant is
guilty if he engages in sexual penetration with
another person, that other person is at least thirteen
but less than sixteen years of age, and any of the fol-
lowing: (i) the actor is a member of the same house-
hold as the victim; (ii) the actor is related to the vic-
tim by blood or affinity to the fourth degree; (iii) the
actor is in a position of authority over the victim and

used this authority to coerce the victim to submit. In this case, both victims were between the ages of thirteen and sixteen at the times of the offenses, the majority's second similarity. Defendant was a member of the same household as both victims, and defendant was related by either blood or affinity to both victims, the majority's first similarity of a father-daughter relationship. Finally, as a father or stepfather he was in a position of authority over both victims and arguably used it to get them to submit, which is the majority's third similarity of use of threats.[10]

It is obvious that the preceding logic will do great damage to the law of evidence if the prosecutor is allowed to introduce the very elements or nature of a prior crime in order to show that the defendant committed a later crime. Any second offender of a charged or uncharged similar crime will have his prior acts disclosed to the jury in order to prove a plan. There is no longer a requirement that the prosecutor show a permissible intermediate inference to prove any material fact. Similarities instantly show a plan, and use of a plan shows that defendant committed the crime at issue.

Moreover, the majority has shown nothing to indicate that the common features of the charged and uncharged crimes "indicate[d] the existence of a plan rather than a series of similar spontaneous acts" under the *Ewoldt* test. *Id.* at 403. Rather, the facts indicate that defendant spontaneously took advantage of an opportunity to rape his daughter while they

---

[10] The majority concedes that the charged and uncharged acts were dissimilar in many respects. Rather than acknowledge that the two crimes are separate spontaneous acts lacking a common thread other than the statutory elements, it takes cover in the abuse of discretion standard of review—a standard that now appears insurmountable.

were alone in the house. No facts show that he
manipulated the situation in order to get his daughter
alone in the house as part of a plan to later attack
her. The threat that she would break up the family
appears to have been an afterthought to cover up the
crime after it occurred rather than part of an overall
common plan to commit CSC I. Finally, no facts link
the prior acts against defendant's stepdaughter to a
plan to rape defendant's daughter ten years later. The
majority has failed to even show the impermissible
"series" of spontaneous acts. While it is alleged that
defendant committed a series of similar acts against
his stepdaughter, the instant offense is remote in time
and cannot be considered a part of that series.
Instead, the instant offense is nothing more than a
similar act in that it too is a CSC I offense.

CONCLUSION

The majority errs for several reasons. First, it has
removed the responsibility of the prosecutor to pro-
vide and articulate a proper purpose as required
under the first leg of the *VanderVliet* test. Instead, it
adopts a new "common plan" purpose not argued by
the prosecutor. This allows appellate courts, in hind-
sight, to search for proper purposes to support admis-
sion of MRE 404(b) evidence despite the fact that
defendant was not allowed to argue against its admis-
sion. Because the prosecutor failed to carry its bur-
den for introduction of the other acts evidence, our
inquiry should end. Second, the majority errs in
removing the longstanding requirement of showing
that the evidence of the plan legitimately and logically
shows that defendant committed the crime. The
majority simply asserts that the commission of the

crime is the ultimate fact, but fails to explain how the facts of the first sex offense led to the conclusion that the second offense was committed. The majority cannot show that the evidence of a common plan in this case is relevant apart from its tendency to show that the defendant committed the instant crime because he acted in conformity with his criminal disposition. Third, the majority errs in creating a rule that any similarities among successive crimes proves a plan, and thus proves that the charged offense was committed. Even under that test, the similarities ought not be the elements or nature of the crime itself.

For the above reasons, I would affirm the decision of the Court of Appeals.

KELLY, J., concurred with CAVANAGH, J.