**Lansing, Michigan**

# Opinion

Chief Justice:      Justices:
Marilyn Kelly       Michael F. Cavanagh
                    Elizabeth A. Weaver
                    Maura D. Corrigan
                    Robert P. Young, Jr.
                    Stephen J. Markman
                    Diane M. Hathaway

FILED JULY 31, 2010

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v                                                      No. 139146

FREDERICK JAMES MARDLIN,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

The Court of Appeals erroneously concluded that evidence of an unusual number of prior fires—each associated with property owned or controlled by defendant—was inadmissible in this arson case in which defendant was accused of intentionally starting a fire in his home. Because the evidence was not offered to prove defendant's bad character or his propensity to act in conformity with a bad character, the trial court correctly concluded that MRE 404(b)(1) did not preclude admission of the evidence. Further, the trial court did not abuse its discretion by concluding that the evidence was sufficiently probative to outweigh any danger of unfair prejudice under MRE 403. The

Court of Appeals, like the dissent in this Court, incorrectly concluded that the lack of direct evidence that defendant intentionally set the past fires precluded or weighed *against* admission. To the contrary, as precedent of this Court has clearly established, defendant's apparent lack of direct culpability weighed *in favor of* admission because it minimized impermissible negative inferences about his character. Indeed, the evidence was noncharacter evidence admissible under the theory of logical relevance known as the doctrine of chances. Accordingly, we reverse the May 5, 2009 opinion of the Court of Appeals,[1] reinstate defendant's convictions, and remand to the Court of Appeals for that Court to consider defendant's remaining arguments on appeal.

## I. FACTS AND PROCEEDINGS

Defendant admitted that he was the only person present at his home just before it caught fire on the afternoon of November 13, 2006. He left the premises to visit his brother shortly before the fire was reported by neighbors. After the fire, defendant filed an insurance claim seeking compensation for the damage to his home. The investigating police detective and a fire investigator for defendant's insurer both concluded that the fire had been intentionally set and originated from a love seat in the living room. Accordingly, the prosecution charged defendant with arson of a dwelling house, MCL 750.72, and burning insured property, MCL 750.75. Defendant claimed that the fire was an accident likely caused by faulty electrical wiring.

---

[1] *People v Mardlin*, unpublished opinion per curiam of the Court of Appeals, issued May 5, 2009 (Docket No. 279699).

2

At trial, the prosecution showed that defendant had fallen behind on his mortgage payments and utility bills before the fire occurred. The prosecution also showed that defendant had been associated with four previous home or vehicle fires—each of which also involved insurance claims and arguably benefitted defendant in some way—in the 12 years preceding the charged fire. Specifically, defendant's home caught fire in the spring of 2006, apparently as the result of a blanket being left on a kerosene heater. Defendant filed an insurance claim for the resulting smoke damage. In 2003, a van driven by defendant but owned by his employer caught fire. The prosecution argued that defendant had a motive to damage this van. The employer had recently transferred a newer van, previously issued to defendant, to another employee; it then issued the van that later caught fire, which was an older model, to defendant. After the older van burned, the employer was forced to replace it. In 2001, defendant's own van caught fire and the fire spread to his mobile home. Defendant received an insurance payment for that van. Finally, in 1994, defendant's truck caught fire, for which he submitted an insurance claim. Although none of these fires was established to have resulted from arson,[2] the prosecution argued that the pattern was probative to rebut defendant's claim that he had not intentionally set the November 2006 fire.

The jury indeed concluded from all the evidence that defendant intentionally set the November 2006 fire. It convicted him, as charged, of arson of a dwelling house and

---

[2] Not all of the fires were investigated by police or fire officials.

burning insured property.  The trial court sentenced defendant to concurrent prison terms of 3 to 20 years and 1 to 10 years.

The Court of Appeals reversed, concluding that the trial court improperly admitted the evidence of previous fires under MRE 404(b)(1).  The appeals panel concluded that this evidence was irrelevant, inadmissible, and improperly prejudicial.  Accordingly, it remanded for a new trial.

The prosecution applied in this Court for leave to appeal the Court of Appeals decision.  We granted leave and directed the parties to address

> whether evidence provided under the "doctrine of chances" may be used to establish that a fire did not have a natural or accidental cause, and whether more than the mere occurrence of other fires involving the defendant's property is necessary for admission of such evidence.[3]

## II.  STANDARD OF REVIEW

A trial court's discretionary decisions concerning whether to admit or exclude evidence "will not be disturbed absent an abuse of that discretion."[4]  When the decision involves a preliminary question of law however, such as whether a rule of evidence precludes admission, we review the question de novo.[5]

## III.  MRE 404(b)(1)

MRE 404(b)(1) provides:

---

[3] *People v Mardlin*, 485 Mich 870 (2009).

[4] *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

[5] *Id.*

4

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To admit evidence under MRE 404(b),[6] the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is *not* simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character.[7] The prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity.[8] Evidence relevant to a noncharacter

---

[6] Although applying MRE 404(b)(1) to the facts of some cases has produced divisions among the justices of this Court in the past, we have unanimously confirmed that the opinions in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), *People v Crawford*, 458 Mich 376; 582 NW2d 785 (1998), and *People v Sabin (After Remand)*, 463 Mich 43; 614 NW2d 888 (2000), "continue to form the foundation for a proper analysis of MRE 404(b)." *People v Knox*, 469 Mich 502, 510; 674 NW2d 366 (2004).

[7] *VanderVliet*, 444 Mich at 60-61, 74.

[8] *Crawford*, 458 Mich at 385; *VanderVliet*, 444 Mich at 65-66. The prosecution, however, does not bear a "heightened" burden to "establish[] the theory of admissibility" nor does the prosecution's "failure to identify at trial the purpose that supports admissibility require[] reversal." *Sabin*, 463 Mich at 59 n 6. Rather, consistent with the notice requirement of MRE 404(b)(2), the prosecution must provide a "rationale for admitting the evidence . . . to ensure that the defendant is aware of the evidence and to provide an enlightened basis for the trial court's determination of relevance and decision whether to exclude the evidence under MRE 403." *Id.* In part because *all* relevant evidence is admissible, MRE 402, *unless* evidence bears solely on a defendant's character, MRE 404(b)(1), "[t]he prosecution's recitation of purposes at trial does not

purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity.[9] Stated another way, the rule is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character.[10] Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403.[11] Finally, upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes.[12]

---

restrict appellate courts in reviewing a trial court's decision to admit the evidence." *Id.* at 59 n 6; and see *id.* at 56.

[9] *Crawford*, 458 Mich at 385; *VanderVliet*, 444 Mich at 63-64.

[10] *VanderVliet*, 444 Mich at 64-65; see also *Sabin*, 463 Mich at 56. Indeed, MRE 404(b) is not even implicated if the prosecution seeks to introduce logically relevant evidence of other acts performed by the defendant if the evidence does not generate an intermediate inference as to his character. *VanderVliet*, 444 Mich at 64.

[11] *Crawford*, 458 Mich at 385; *VanderVliet*, 444 Mich at 74-75.

[12] *Crawford*, 458 Mich at 385; *VanderVliet*, 444 Mich at 75.

## IV. THE DOCTRINE OF CHANCES

The doctrine of chances—also known as the "doctrine of objective improbability"—is a "'theory of logical relevance [that] does not depend on a character inference.'"[13]  Under this theory, as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act *and/or* the prior occurrences were not the result of natural causes. The doctrine is commonly discussed in cases addressing MRE 404(b) because the doctrine describes a logical link, based on objective probabilities, between evidence of past acts or incidents that may be connected with a defendant and proper, noncharacter inferences that may be drawn from these events on the basis of their frequency.  If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance.  To illustrate, *United States v York*[14] provides a classic description of the doctrine when used to negate innocent intent:

> The man who wins the lottery once is envied; the one who wins it twice is investigated.  It is not every day that one's wife is murdered; it is more uncommon still that the murder occurs after the wife says she wants a divorce; and more unusual still that the jilted husband collects on a life insurance policy with a double-indemnity provision.  That the same

---

[13] *Crawford*, 458 Mich at 393, quoting Imwinkelried, Uncharged Misconduct Evidence, § 5:05 at 12.

[14] 933 F2d 1343 (CA 7, 1991), overruled in part on other grounds *Wilson v Williams*, 182 F3d 562, 565 (CA 7, 1999).

individual should later collect on exactly the same sort of policy after the grisly death of a business partner who owed him money raises eyebrows; the odds of the same individual reaping the benefits, within the space of three years, of two grisly murders of people he had reason to be hostile toward seem incredibly low, certainly low enough to support an inference that the windfalls were the product of design rather than the vagaries of chance. . . . This inference is purely objective, and has nothing to do with a subjective assessment of [the defendant's] character.[15]

The seminal English case employing the doctrine, *Rex v Smith*,[16] acknowledged that evidence of past alleged accidents may be admitted to show "whether the acts alleged to constitute the crime charged in the indictment were designed or accidental, or to rebut a defence [sic] which would otherwise be open to the accused."[17] *Rex v Smith* infamously involved a defendant accused of drowning his wife in the bath.[18] The Court of Criminal Appeal concluded that the trial court properly admitted evidence that two other wives of the defendant were each similarly found dead in their baths from apparent accidental drowning.[19] Consistent with the modern rule, the court acknowledged that the prosecution generally may not

adduce evidence tending to shew [sic] that the accused has been guilty of criminal acts other than those covered by the indictment, for the purpose of leading to the conclusion that the accused is a person likely, from his criminal conduct or character, to have committed the offence [sic] for which he is being tried. On the other hand, the mere fact that the evidence

---

[15] *Id.* at 1350; see also *VanderVliet*, 444 Mich at 79 n 35, quoting *York*.

[16] See 11 Cr App R 229 (1915).

[17] *Id.* at 237 (citation and quotation marks omitted).

[18] *Id.* at 229.

[19] *Id.* at 229, 237.

adduced tends to shew [sic] the commission of other crimes does not render it inadmissible if it be relevant to an issue before the jury . . . . [20]

Thus, the evidence that several of the defendant's wives had drowned in their baths was properly admitted "for the purpose of shewing [sic] the design of the [defendant]."[21]  The court also observed that the judge was appropriately "careful to point out to the jury the use they could properly make of the evidence."[22]

The doctrine of chances is often similarly employed in cases alleging arson to argue that the fire at issue was not an accident, but was intentionally caused by the defendant.  Indeed, arguably the doctrine is epitomized in arson cases in which apparently accidental fires befall property linked to the defendant with uncommon frequency.  As explained by Professor Edward Imwinkelried:

> Based on ordinary common sense and mundane human experience it is unlikely that a large number of similar accidents will befall the same victim in a short period of time.  Considered in isolation, the charged fire . . . may be easily explicable as an accident.  However, when all similar incidents are considered collectively or in the aggregate, they amount to an extraordinary coincidence; and the doctrine of chances can create an inference of human design.  The recurrence of similar incidents incrementally reduces the possibility of accident.  The improbability of a coincidence of acts creates an objective probability of an actus reus. [Imwinkelried, 1 Uncharged Misconduct Evidence (rev ed, March 2008 supp), § 4:3, pp 4-42 and 4-43.]

---

[20] *Id.* at 237 (citation and quotation marks omitted).

[21] *Id.*

[22] *Id.*

## V. APPLICATION TO THIS CASE

The fires here were admissible precisely because they constituted a series of similar incidents—fires involving homes and vehicles owned or controlled by defendant—the frequency of which[23] objectively suggested that one or more of the fires was not caused by accident. The Court of Appeals principally erred by incorrectly assuming that evidence of the past fires could only be admitted if the prosecutor proved that defendant intentionally set them or that they shared other special qualities or additional significant indices of similarity. Defendant and the dissent similarly err by concluding that, in the words of the dissent, *Crawford*, *supra*, established, as a general rule, that past incidents must be "sufficiently similar to the charged offense to warrant admission," and that "*Crawford* makes it clear that similarity is a key factor in determining the applicability of the doctrine of chances." These blanket conclusions are incorrect.

To the contrary, application of the doctrine of chances "varies with the issue for which it is offered."[24] As with all arguments involving prior acts or events, the "method

---

[23] Indeed, during voir dire the prosecutor asked the jurors if any of them had "experienced" a fire in their lifetimes. One juror had experienced one fire. In contrast, defendant experienced 5 fires in 12 years. Defendant's association with burned property is certainly unusual. This association was thus probative of the credibility of defendant's statements that the November 2006 fire was a mere accident or had natural causes because the unusually high occurrence of fires in relation to defendant's property creates a permissible inference of human design. Ultimately, it was up to the jury to determine whether defendant simply is extraordinarily jinxed or had engaged in wrongdoing that caused some or all of the burned vehicles and houses.

[24] *VanderVliet*, 444 Mich at 79 n 35.

of analysis to be employed depends on the purpose of the offer and its logical relevance."[25] The acts or events need not bear striking similarity to the offense charged if the theory of relevance does not itself center on similarity. As the *VanderVliet* Court explained:

> "If we ask, does [the] misconduct have to exhibit striking similarity with the misconduct being investigated, the answer is, only if similarity is relied on. Otherwise not. There are only two classes of case[s] [those in which similarity is relied on and those in which it is not], and they do not depend on the nature of the evidence, but on the nature of the argument."[26]

*Crawford*, in which the Court stressed similarity, did not involve a series of purported accidents as here. Rather, there the prosecution offered evidence of a past drug-related conviction centrally to prove the defendant's *mens rea* or *knowledge* that drugs were concealed in the dashboard of his car.[27] Thus, the specific holding of *Crawford* is largely inapposite. The same holds true for the cases on which the Court of Appeals here relied in concluding that the prior fires were too dissimilar to be admitted: *Sabin*, *supra*, and *People v Golochowicz*, 413 Mich 298; 319 NW2d 518 (1982). Both these cases involved theories of relevance explicitly rooted in similarities between the past events and the crime charged. In *Sabin*, the prosecution "stressed the similarities between the charged incident [of the defendant's sexual abuse of his daughter] and the

---

[25] *Id.* at 67.

[26] *Id.*, quoting Elliott, *The young person's guide to similar fact evidence—I*, 1983 Crim L R 284, 288 (brackets in original).

[27] *Crawford*, 458 Mich at 394-397.

[past sexual] abuse of [his] stepdaughter" in seeking admission of the past abuse.[28]  This Court concluded that the past abuse was admissible only under the theory that the defendant employed a similar plan, scheme, or system in doing an act.[29]  This theory of relevance requires that "the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system."[30]  *Golochowicz*, in turn, was a murder case in which the prosecution sought to admit evidence of a prior, similar assault in order to advance a "*modus operandi theory* to prove *identity.*"[31]  *Golochowicz* thus established a test for admission under such a theory that required substantial evidence that the defendant committed the prior act and some "special quality" of the act that tended to prove the defendant's identity.[32]

Here, to the contrary, the prosecution did not move to admit evidence of the past fires only on the basis of theories of logical relevance requiring a high degree of similarity to the charged fire.  As we emphasized in *VanderVliet* while advancing a more flexible test than the one described in *Golochowicz*: "the *Golochowicz* approach to modus operandi cases to show identity is not a 'conceptual template' to 'mechanically test' all

---

[28] *Sabin*, 463 Mich at 50.

[29] *Id.* at 61, 67-68.

[30] *Id.* at 63.

[31] See *VanderVliet*, 444 Mich at 66.

[32] *Golochowicz*, 413 Mich at 307-309.

misconduct evidence barring use of other permissible theories of logical relevance."[33] Rather, "[w]here the proponents' theory is not that the acts are so similar that they circumstantially indicate that they are the work of the accused, *similarity between charged and uncharged conduct is not required.*"[34] Different theories of relevance require different degrees of similarity between past acts and the charged offense to warrant admission. Thus, the "level of similarity required when disproving innocent intent is less than when proving modus operandi."[35] "When other acts are offered to show innocent intent, logical relevance dictates only that the charged crime and the proffered other acts 'are of the same general category.'"[36] Past events—such as fires in relation to an arson case—that suggest the absence of accident are offered on the basis of a theory of logical relevance that is a subset of innocent intent theories.[37] As such, the past events need *only* be of the same general category as the charged offense. Professor Imwinkelried explained, in the context of arson cases:

> Suppose that the defendant is charged with arson. The defendant claims that the fire was accidental. The cases routinely permit the

[33] *VanderVliet*, 444 Mich at 67, quoting *Golochowicz*, 413 Mich at 314.

[34] *VanderVliet*, 444 Mich at 69 (emphasis added).

[35] *Id.* at 80 n 36.

[36] *Id.* at 79-80, quoting Imwinkelried, Uncharged Misconduct Evidence, § 3:11, p 23. We stress that, contrary to the dissent's suggestions, we do not here invent the "same general category" requirement or the notion that different theories of relevance require different degrees of similarity among the proffered evidence. These concepts come directly from majority opinions of this Court.

[37] *VanderVliet*, 444 Mich 80 n 37.

13

prosecutor to show other acts of arson by the defendant *and even nonarson fires at premises owned by the defendant*. In these cases, the courts invoke the doctrine of objective chances. The courts reason that as the number of incidents increases, the objective probability of accident decreases. Simply stated, it is highly unlikely that a single person would be victimized by so many similar accidental fires . . . .[38]

Accordingly, here the Court of Appeals erred by basing its analysis on its conclusion that the past fires were not highly similar to the charged fire due largely to the lack of definitive proof that defendant intentionally set the past fires. Because defendant owned or controlled all the burned property,[39] the unusual number of past fires was classically relevant to defendant's claim that the November 2006 fire was an accident; the frequency of past fires so closely associated with defendant logically suggested a lack of coincidence. The defense theory in a case in part governs what evidence is logically

---

[38] Imwinkelried, 1 Uncharged Misconduct Evidence (rev ed, March 2008 supp), § 4:1, pp 4-6 to 4-9 (emphasis added).

[39] Contrary to the dissent's apparent fears, our acknowledgement that past events need only fall into the same "general category" under these circumstances does not extinguish the need for similarity to whatever extent similarity is relevant in a particular case. Here the fires were sufficiently similar or related because they each involved a *home or vehicle that was under defendant's control*. It is not as if, for example, the prosecution sought to introduce evidence that an unusual number of fires occurred in the county where defendant lives without otherwise linking the fires to defendant in some way. In other words, although such fires would be of the same general category on some level, we do not suggest that they could be admitted without additional evidence linking them to the defendant. The dissent's fears overstate the nature of our holding, which is perfectly consistent with cases such as *Rex v Smith* and *United States v Woods*, 484 F2d 127 (CA 4, 1973), where admission was appropriate because the past events were sufficiently similar to support a lack of accident theory (in *Rex v Smith*—the *defendant's wives* apparently drowning accidentally in their baths at an unusual rate; in *Woods*— children *cared for by the defendant* apparently spontaneously developing similar health conditions at an unusual rate; here—property *controlled by defendant* catching fire at an unusual rate).

14

relevant.[40]  Indeed, as was the case in *York*, *supra*,[41] the "fact that [the] defense included innocent explanations" for acts surrounding his allegedly illegal activity actually "underscore[d] the relevance" of the prior acts evidence.[42]  In response to the defendant's arguments that the prior acts were not sufficiently similar, the *York* Court opined that he was "looking at trees rather than the forest"; "when evidence is offered to prove intent, the degree of similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent. . . .  The prior acts need not be duplicates of the one for which the defendant is now being tried."[43]

In sum, the past fires were logically relevant to the objective probability that the November 2006 fire was intentionally set.  Thus, the fires were admissible to negate defendant's claim that the fire was a mere accident.[44]

Although defendant and the dissent emphasize that he offered innocent explanations for the past fires and other evidence tending to show that he had no motive to burn particular property, his innocent explanations do not control the admissibility

---

[40] *VanderVliet*, 444 Mich at 75.

[41] As noted, *York* was cited with approval by *VanderVliet*, 444 Mich at 79 n 35.

[42] *York*, 933 F2d at 1350.

[43] *Id.* at 1351 (citations and quotation marks omitted; ellipses in original).

[44]  Moreover, although more similarity among the fires was unnecessary for admission, arguably the fires were sufficiently similar to prove identity, motive, or that defendant acted consistent with a scheme or plan to burn property in order to gain a benefit for himself.  Indeed, each fire resulted in an insurance claim that arguably benefitted defendant.  Even the fire involving his employer's van resulted in replacement of the burned van, which was an older model recently issued to defendant.

analysis. For example, he claimed that the fire involving his employer's van also destroyed defendant's personally owned work tools. He also established that, although he turned on the kerosene heater involved in the spring 2006 house fire, his housemate admitted leaving the fire-causing blanket on the heater. He stressed that the 2001 fire involving his insured van spread to his mobile home, which was not insured. Further, he presented evidence that, after the 1994 fire that damaged his truck,[45] he nonetheless was required to keep making payments on the damaged truck despite obtaining the insurance proceeds. With regard to the November 2006 fire, defendant also presented an expert who opined that the fire began *behind* the love seat thus implying that an electrical fault might have caused it; defendant also showed that the prosecution had not appointed an expert to test this wiring.[46]

But these explanations do not render evidence of the past fires *inadmissible*. Rather, the very function of the doctrine of chances is to permit the introduction of events that might appear accidental in isolation, but that suggest human design when viewed in aggregate. Because the prosecution's noncharacter theory for admission was sound, the evidence was admissible.[47] Further, a jury may generally decide whether a defendant's

---

[45] The truck appears to have been possessed and paid for by defendant, but owned by his father.

[46] Defendant's claim that his trial attorney should have retained an expert to test the wiring before trial should be considered by the Court of Appeals on remand.

[47] Compare *York*, 933 F2d at 1350 (The odds of particular events benefitting the defendant may be "low enough to support an inference that the windfalls were the product of design rather than the vagaries of chance . . . [and] [t]his inference is purely

claim of innocence—here his claim that all five fires were accidental—is more credible or likely than the prosecution's claim of guilt. The jury is the sole judge of the facts; its role includes listening to testimony, weighing evidence, and making credibility determinations.[48] Indeed, "a basic premise of our judicial system [is that] providing more, rather than less, information will generally assist the jury in discovering the truth."[49] The weight to be given to admitted evidence is left to a properly instructed jury's common sense and judgment.[50] On this point, I respectfully suggest that the dissent usurps the jury's role by concluding that the previous fires were inadmissible because defendant received "little, if any, insurance money" or on the basis of the *dissent*'s rejection of the argument that defendant benefitted from the past fires. It is for the jury to decide whether defendant benefitted from the fires or might have anticipated benefitting without accurately predicting their ultimate impact on his property or finances.

---

objective, *and has nothing to do with a subjective assessment of [the defendant's] character*.") (emphasis added).

[48] *People v Lundy*, 467 Mich 254, 258 n 6; 650 NW2d 332 (2002).

[49] *People v Anstey*, 476 Mich 436, 457; 719 NW2d 579 (2006); and see *Harvey v Horan*, 285 F3d 298, 299 (CA 4, 2002) ("The American criminal justice system rightly sets the ascertainment of truth and the protection of innocence as its highest goals.").

[50] E.g. CJI2d 2.4(2) ("You must think about all the evidence and all the testimony and then decide what each piece of evidence means and how important you think it is."); CJI2d 2.6(2) ("In deciding which testimony you believe, you should rely on your own common sense and everyday experience.").

The trial court could also take into account defendant's claims of innocence with regard to the fires in deciding whether evidence of the past fires was more probative than unduly prejudicial under MRE 403. But the court did not abuse its discretion in nonetheless admitting the evidence under this rule. The trial court is in the best position to make MRE 403 determinations on the basis of "a contemporaneous assessment of the presentation, credibility, and effect of testimony . . . ."[51] Accordingly, we review its decisions admitting or excluding evidence under a deferential standard and will reverse only if we identify "a clear abuse of discretion."[52]

No such abuse occurred here. As explained above, first, the prior fires were highly, objectively relevant to defendant's claim that all five fires, including the November 2006 fire, were mere accidents. Second, the amount of "unfair prejudice," MRE 403, was minimal. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury."[53] Thus, MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so."[54] Here, there was minimal unfair prejudice—such as improper character

---

[51] *VanderVliet*, 444 Mich at 81.

[52] *Crawford*, 458 Mich at 383.

[53] *Crawford*, 458 Mich at 398.

[54] *Id.*

implications—because any prejudice arose properly from the objective frequency of fires associated with property owned or controlled by defendant.[55]

Indeed, defendant's insistence—echoed by the Court of Appeals and the dissent—that there was no proof he *intentionally* caused the past fires actually weighs in favor of admission because, absent proof of past criminal intent associated with the evidence, the evidence does not create the traditional intermediate inference about character or criminal propensities associated with established, past criminal acts or convictions. Thus, the evidence stands in stark contrast to the proffered evidence in *Crawford*, *supra*, where the Court opined that the danger of unfair prejudice is prevalent when the jury "learns that a defendant *has previously committed the same crime as that for which he is on trial*" because the jury may therefore presume that he is likely to commit the same crime again because he is "a bad person, a convicted criminal . . . ."[56]

Indeed, the dissent's approach here threatens to contradict this Court's critical observation that MRE 404(b)(1) is "*inclusionary* rather than exclusionary"; "[t]here is no

---

[55] Moreover, *even if* one could conclude that the unfair prejudice issue creates a close question concerning whether the evidence should have been admitted under the MRE 403 balancing test, "[a]s we have often observed, the trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion." *Sabin*, 463 Mich at 67.

[56] *Crawford*, 458 Mich at 398 (emphasis added); cf. *VanderVliet*, 444 Mich at 64 (The general rule excluding mere character evidence reflected in MRE 404(b) is not even implicated if the evidence is logically relevant but does not generate an intermediate inference as to character.).

policy of general exclusion relating to other acts evidence."[57]  Justices of this Court have long been concerned that a misunderstanding of MRE 404(b)(1) would erode the rule's proper application in this manner.  Notably, in her *Crawford* dissent, Justice BOYLE— joined by Justices WEAVER and TAYLOR—concluded that the majority used an erroneous exclusionary approach when it barred evidence that appears significantly *more* unfairly prejudicial than the evidence here (because the evidence in *Crawford* revealed that the defendant actually committed a crime in the past).  She expressed concern that, "[p]rotestations to the contrary," the *Crawford* majority went too far and effectively utilized the incorrect exclusionary approach.[58]

Finally, the trial court correctly instructed the jury to consider the evidence only for proper, noncharacter purposes pursuant to MRE 105.  A limiting instruction generally "suffice[s] to enable the jury to compartmentalize evidence and consider it only for its proper purpose . . . ."[59]

## VI.  CONCLUSION

The trial court properly admitted evidence of the past fires, which were logically relevant particularly to rebut defendant's claim that the November 2006 fire was a mere

---

[57] *VanderVliet*, 444 Mich at 64-65 (citation and quotation marks omitted); see also *Crawford*, 458 Mich at 390-391 n 8 ("*VanderVliet* embraced the 'inclusionary' approach to prior misconduct evidence"; "[t]he 'inclusionary' theory . . . recognizes the rule's restrictive application to evidence offered *solely* to prove criminal propensity . . . .") (emphasis added).

[58] *Crawford*, 458 Mich at 400 (BOYLE, J., dissenting).

[59] *Crawford*, 458 Mich at 399 n 16.

accident. The Court of Appeals erroneously held that a high degree of similarity between past acts or events and the crime charged is necessary in order for evidence of the past events to be admissible. To the contrary, precedent examining MRE 404(b) and the doctrine of chances clearly establishes that unusually frequent events—and *particularly* purported accidents—associated with the defendant and falling into the same general category of incidents are admissible to disprove lack of accident or innocent intent with regard to the charged event. Such evidence is particularly useful in arson cases where unusually frequent individual fires, which could appear to be accidents when viewed in isolation, may constitute the most probative objective evidence that the defendant intentionally set the fire underlying the arson charge.

For these reasons, we reverse the Court of Appeals opinion, affirm the trial court's evidentiary ruling, and reinstate defendant's convictions. This case is remanded to the Court of Appeals for consideration of defendant's remaining arguments on appeal.

We do not retain jurisdiction.

WEAVER, YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, J.

21

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

No. 139146

FREDERICK JAMES MARDLIN,

      Defendant-Appellee.

---

KELLY, C.J. (*dissenting*).

Defendant was accused of setting fire to his house and charged with arson of a dwelling house and burning insured property. The question presented is whether evidence of four fires with which defendant had had some connection in the preceding 12 years was properly admitted at trial under the doctrine of chances to prove lack of accident.

I believe that the doctrine does not apply in this case because of the dissimilarities between the previous fires and the charged fire. Furthermore, even if the previous fires were relevant, any probative value they have is substantially outweighed by the danger of unfair prejudice. Hence, the evidence is inadmissible under MRE 403. For those reasons, I respectfully dissent.

## FACTS AND PROCEDURAL HISTORY

After a seven-day trial, a jury convicted defendant of arson of a dwelling house, MCL 750.72, and burning insured property, MCL 750.75. The convictions arose from a

fire at defendant's house on the afternoon of November 13, 2006. At the time of the fire, defendant was at his brother's house nearby. However, he had recently been at his own house and was the only person there that afternoon.

Michigan State Police Detective Sergeant Michael Waite, an expert in the cause and origin of fires, investigated and concluded that the fire originated from a love seat in the living room. Testing failed to reveal the presence of an accelerant. But Waite believed that charring on the front part of the love seat and the speed with which the fire spread were consistent with the use of an accelerant. After ruling out possible accidental causes of the fire, Waite concluded that it was started by an intentional act.

During trial, the prosecution presented evidence that defendant and his family were having financial difficulties at the time of the fire. They were in arrears on their mortgage payments and several utility bills. The prosecution also presented evidence of previous fires involving property that defendant had at one time owned or possessed. It is this evidence that is at issue here.

The first fire occurred in 1994, 12 years earlier. Defendant's Ford Ranger caught fire while he and friends were ice fishing. The truck was insured under defendant's father's name, but defendant was paying for it. Defendant continued to make payments on the truck loan afterwards because the insurance coverage did not extend to the entire amount owing on the vehicle.

The second fire took place in 2001. At that time, defendant owned an older van that had many mechanical problems. The van caught on fire and the fire spread to defendant's mobile home. The fire chief for Bruce Township determined that the fire

2

started under the hood of the van. There was only a small insurance payment for the damages to the van, and the damage to defendant's home was not covered by insurance. The fire chief found nothing suspicious about the fire.

Another fire occurred when, in 2003, a van owned by defendant's employer caught on fire. The fire was determined to have started in the engine compartment. Defendant received no insurance proceeds because he did not own the van. He lost all his personal tools used for his employment.

The last fire occurred in 2006 at defendant's residence. It allegedly started when one of defendant's roommates left a blanket on top of a kerosene heater. The fire department was not called, and the fire caused only smoke damage. Defendant received insurance benefits for this fire.[1]

The prosecutor sought to introduce evidence of the 2006 fire at defendant's home, the 2001 vehicle fire that spread to defendant's mobile home, and the 1994 truck fire. The purpose was to demonstrate a pattern of behavior, motive, scheme, plan, and system in causing the fires.

---

[1] I do not agree with the majority's assertion that each of these fires "arguably benefitted [the] defendant in some way." The 1994 fire destroyed defendant's father's truck, and defendant had to continue to make payments on it; the 2001 fire burned defendant's van and mobile home, and the damage to the mobile home was not covered by insurance; defendant collected no insurance proceeds on the burned work vehicle, and all his personal tools were destroyed. If defendant wanted a new work truck enough to set the one he drove on fire, one would think he would have taken his tools out of it beforehand.

3

The trial court ruled that the evidence could be admitted under MRE 404(b)(1) for these purposes, as well as to prove lack of accident. Under the same rule, it also allowed the prosecutor to introduce evidence of the fire involving defendant's employer's vehicle. In addition, the court allowed the jury to consider the evidence for other purposes. It instructed the jury that the evidence might be considered to determine whether defendant (1) had a reason to commit the charged crime, (2) specifically intended to burn his residence, (3) acted purposefully and not by accident or mistake, or because he misjudged the situation and, (4) had a plan, system, or characteristic scheme that he used before or after. Thus, the court allowed consideration of the other fires as proof of motive, intent, absence of mistake or accident, a scheme, plan, or system in doing an act, and identity.

Defendant was convicted as charged. He was sentenced to concurrent prison terms of 3 to 20 years for the arson of a dwelling house conviction and 1 to 10 years for the burning of insured property conviction.

On appeal, the Court of Appeals held that the trial court abused its discretion by admitting the other acts evidence of the four fires with which defendant was associated.[2] It agreed with defendant that the prosecutor had not established its relevance. The Court of Appeals considered and rejected each of the prosecutor's proffered bases for admission of the evidence under MRE 404(b)(1). It also found that evidence of the other fires was inadmissible under MRE 403 because they were minimally probative and the danger of

---

[2] *People v Mardlin*, unpublished opinion per curiam of the Court of Appeals, issued May 5, 2009 (Docket No. 279699).

4

unfair prejudice substantially outweighed their probative value. After determining that the error in admitting the evidence was outcome determinative, it reversed the convictions and remanded the case for a new trial.

On the prosecution's application, this Court granted leave to appeal and directed the parties to address "whether evidence provided under the 'doctrine of chances' may be used to establish that a fire did not have a natural or accidental cause, and whether more than the mere occurrence of other fires involving the defendant's property is necessary for admission of such evidence."[3]

## MRE 404(b)—THE ADMISSION OF OTHER ACTS EVIDENCE

The decision to admit or exclude evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. An abuse occurs if the trial court chooses an outcome falling outside the range of principled outcomes.[4] Preliminary questions of law, such as whether a rule of evidence precludes admissibility, are reviewed de novo.[5]

The admission of evidence under MRE 404(b) involves a preliminary question of law. It is a codification of the fundamental principle that courts and juries try cases, not persons; thus, in reaching its verdict, a jury may consider only evidence of the events in

---

[3] *People v Mardlin*, 485 Mich 870 (2009).

[4] *People v Babcock*, 469 Mich 247, 269-270; 666 NW2d 231 (2003).

[5] *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

question, not the defendant's prior acts.[6]   A jury should not convict a defendant inferentially on the basis of his or her bad character.  Rather, it should determine whether he or she is guilty of the crime charged.[7]

MRE 404(B)(1) permits the admission of evidence of other crimes, wrongs, or acts if (1) offered for a proper purpose, (2) relevant to an issue or fact of consequence at trial, and (3) sufficiently probative to outweigh the danger of unfair prejudice under MRE 403.[8]   The prosecution must "weave a logical thread linking the prior act" to a proper, noncharacter purpose.[9]

The prosecutor argues that, in this case, evidence of the previous fires is admissible under what is known as the "doctrine of chances."  Accordingly, a discussion of that doctrine is warranted.

THE DOCTRINE OF CHANCES

The doctrine of chances is used to establish the relevancy of certain types of past acts evidence and to avoid the prohibition against character evidence.[10]   Basically, it states that, when someone suffers a specific type of accident with extraordinary

---

[6] *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998).

[7] *Id.*

[8] *Id.* at 385.

[9] *Crawford*, 458 Mich at 390.

[10] Imwinkelried, *An evidentiary paradox: Defending the character evidence prohibition by upholding a non-character theory of logical relevance, The doctrine of chances*, 40 U Rich L R 419, 422 (2006).  The doctrine is viewed as a subset of MRE 404(b) rather than a stand-alone doctrine.

6

frequency, it is objectively probable that one or more of the incidents were not accidents.

A treatise describes it as follows:

> Based on ordinary common sense and mundane human experience it is unlikely that a large number of similar accidents will befall the same victim in a short period of time. Considered in isolation, the charged fire . . . may be easily explicable as an accident. However, when all *similar* incidents are considered collectively or in the aggregate, they amount to an extraordinary coincidence; and the doctrine of chances can create an inference of human design. The recurrence of *similar* incidents incrementally reduces the possibility of accident. The improbability of a coincidence of act creates an objective probability of an actus reus.[11]

The doctrine of chances has been traced to the 1915 English case of *Rex v Smith.*[12] The defendant, *Smith*, married three women between 1912 and 1914. After each marriage, he purchased an insurance policy on the life of his new wife and convinced her to sign a will making him her beneficiary. Each of the three women was later found dead in her bath by drowning. At Smith's trial, the prosecution was allowed to introduce evidence of all three deaths over the defendant's objection that the evidence was nothing more than evidence of his bad character.

The appellate court held that the evidence had been properly admitted. In affirming the conviction, it "focused on the objective improbability of so many similar

---

[11] Imwinkelried, 1 Uncharged Misconduct Evidence (rev ed, March 2008 supp), ch 4, § 4:3, pp 4-42 and 4-43.

[12] *Rex v Smith*, 11 CR App R 229 (1915). Also known as the "brides in the bath" case. See Metropolitan Police, *The 'Brides in the Bath' Murders* <http://www.met.police.uk/history/brides.htm> (accessed May 13, 2010).

7

accidents befalling Smith.  Either Smith was one of the unluckiest persons alive, or one or some of the deaths in question were the product of an *actus reus*."[13]

The seminal American case that accepted the doctrine of chances as a noncharacter basis for admitting other acts evidence is the 1973 case of the United States Court of Appeals for the Fourth Circuit of *United States v Woods*.[14]  The defendant in *Woods* was convicted of first-degree murder and numerous other assaultive charges relating to the death of her eight-month old pre-adoptive foster son.  He began suffering from breathing difficulties and cyanosis shortly after going to live with the defendant.  On appeal, she argued that the government had improperly used evidence of other acts involving her care of her other nine children.[15]

To prove that the child's death was neither accidental nor from natural causes the prosecution introduced the testimony of a forensic pathologist.  It then produced evidence that, during the previous 24 years, the defendant had custody of or access to nine other children among whom there were at least 20 episodes of cyanosis.

The appellate court found that the evidence had been properly admitted, ruling that it

> would prove that a crime had been committed because of the remoteness of
> the possibility that so many infants in the care and custody of defendant
> would suffer cyanotic episodes and respiratory difficulties if they were not

---

[13] Imwinkelried, 40 U Rich L R at 435 (2006) (footnotes omitted).

[14] *United States v Woods*, 484 F2d 127 (CA 4, 1973).

[15] The evidence established that three of the defendant's children got sick or died while being held in her arms, one died while in bed with the defendant, and another child was alone with the defendant when he died.

induced by defendant's wrongdoing, and at the same time, would prove the identity of defendant as the wrongdoer.[16]

Another case, *United States v York*, explains clearly how the doctrine of chances can be applied to negate innocent intent:

> The man who wins the lottery once is envied; the one who wins it twice is investigated. It is not every day that one's wife is murdered; it is more uncommon still that the murder occurs after the wife says she wants a divorce; and more unusual still that the jilted husband collects on a life insurance policy with a double-indemnity provision. That the same individual should later collect on exactly the same sort of policy after the grisly death of a business partner who owed him money raises eyebrows; the odds of the same individual reaping the benefits, within the space of three years, of two grisly murders of people he had reason to be hostile toward seem incredibly low, certainly low enough to support an inference that the windfalls were the product of design rather than the vagaries of chance.[17]

These cases stand for the proposition that evidence of other bad acts can be admissible when its logical relevance is not necessarily linked to an impermissible character inference. Thus, the proponent of other acts evidence does not necessarily ask "the trier of fact to infer the defendant's conduct . . . from the defendant's personal, subjective character."[18]  Instead, the proponent may properly ask the trier of fact

---

[16] *Id*. at 135.

[17] *United States v York*, 933 F2d 1343, 1350 (CA 7, 1991), cert den 502 US 916 (1991).

[18] *Crawford*, 458 Mich at 393 (citation and quotation marks omitted).

"whether the uncharged incidents are so numerous that it is objectively improbable that so many accidents would befall the accused."[19]

This Court addressed the doctrine of chances in *People v Crawford*, recognizing that the doctrine is "widely accepted."[20] The defendant in *Crawford* was convicted of possession with intent to distribute cocaine. The prosecution was allowed to introduce evidence of a previous conviction of the same type. On appeal, this Court stated that "the prosecutor must 'make persuasive showings that each uncharged incident is similar to the charged offense and that the accused has been involved in such incidents more frequently than the typical person,'" and that "the applicability of the doctrine of chances depends on the similarity between the defendant's prior conviction and the crime for which he stands charged."[21]

In *Crawford*, the prior conviction was for the sale of cocaine to an undercover police officer.[22] The defendant's pending charges stemmed from an incident where the police stopped the defendant for a routine traffic violation and discovered cocaine in his vehicle.[23] Although both his earlier conviction and the act charged involved narcotics,

---

[19] Imwinkelried, 51 Ohio St L J 575, 586-587. See, also, *Crawford*, 458 Mich at 393.

[20] *Crawford*, 458 Mich at 393.

[21] *Id*. at 394-395 (citation omitted).

[22] *Id*. at 396.

[23] *Id*.

this Court found the two offenses insufficiently similar to warrant admission of the similar acts evidence:

> The prior conviction only demonstrates that the defendant has been around drugs in the past and, thus, is the kind of person who would knowingly possess and intend to deliver large amounts of cocaine . . . . Defendant's prior conviction was mere character evidence masquerading as evidence of "knowledge" and "intent."[24]

A majority of this Court also touched on the doctrine of chances in *People v VanderVliet*.[25] There, the defendant had been charged with second-degree criminal sexual conduct for incidents involving clients of the company where he worked as a case manager. The defendant denied any sexual contact with one victim and claimed his contact with the second victim was accidental. A third victim was discovered during the investigation.

The prosecution sought to introduce testimony of all three victims. The trial court held that the acts involving the other victims were not admissible in either of the pending cases. The Court of Appeals affirmed. A majority of this Court reversed the decision and held that the testimony of the first victim was relevant to show that the touching of the second victim was not accidental or inadvertent. A majority of this Court stated that

> [e]vidence of both of the alleged assaults is logically relevant and probative of the defendant's intent in the [second] case because it negates the otherwise reasonable assumption that the contact described in testimony by

---

[24] *Id*. at 396-397.

[25] *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

11

[the second victim] was accidental, as opposed to being for the purpose of sexual gratification.[26]

## APPLICABILITY OF THE DOCTRINE OF CHANCES TO THE PRESENT CASE

*Crawford* is instructive here. Under *Crawford*, the prosecution must make persuasive showings that (1) the past incidents are sufficiently similar to the charged offense to warrant admission, and (2) the accused has been involved in such incidents more frequently than the typical person.[27] The prosecutor has failed to meet the similarity prong in this case.

Defendant's involvement in four fires in the span of 12 years is more frequent than the typical person experiences. Therefore, the prosecution has satisfied the second prong of *Crawford* for admitting the evidence under the doctrine of chances.

However, the prosecutor has failed to persuasively show a sufficient factual nexus between the prior fires and the charged offense. *Crawford* makes it clear that similarity is a key factor in determining the applicability of the doctrine of chances. All four fires in this case involved property that defendant either owned or possessed. However, three of them involved unexplained vehicle fires, one of which concerned his employer's vehicle. The fourth fire caused smoke damage to defendant's dwelling and was admittedly caused by the defendant's roommate when he left a blanket on a kerosene heater.

---

[26] *VanderVliet*, 444 Mich at 80-81.

[27] *Crawford*, 458 Mich at 394. The determination of what constitutes "more frequently than the typical person" is one best left to the trial court. But I agree with Imwinkelried that statistical data is helpful in establishing frequency. See Imwinkelried, 51 Ohio St L J at 591.

12

The prosecution repeatedly stated in its closing argument that it did not have to prove the origin or the cause of the fires. Instead, it simply asserted that there were fires and defendant was somehow connected to them. There was no proof that defendant caused any of the prior fires. None was considered suspicious, and defendant received little, if any, insurance money. And, in one case, defendant had to continue paying for the vehicle that the fire destroyed. Finally, the prosecution conceded that engine fires are not unusual and, in the case of defendant's employer's van, that defendant was not charged with maintaining the vehicle.

The prosecution has not shown sufficient similarity between the prior fires and the charged fire. No evidence was offered to show the cause of the vehicle fires. Likewise, no evidence was presented linking the fires, such as a common type of accelerant. The charged fire was a house fire and was allegedly started by the use of an accelerant on the living room love seat. Furthermore, it is worth noting that sometime before the charged fire, defendant substantially reduced the insurance coverage on his house.

The decision whether to apply the doctrine of chances is made on a case-by-case basis considering the particular facts of the case. This Court noted in *Crawford* that if the defendant's "prior crime involved the concealment of drugs in the dashboard of his car (as the charged crime did), that evidence would likely be admissible under the doctrine of chances because of the stark similarity of the two crimes."[28]

---

[28] *Crawford*, 458 Mich at 395 n 13.

Likewise, in the present case, if the past fires were similar, whether in time, location, or other characteristics, they would likely have been admissible. I am hesitant to adopt a bright-line rule as to what constitutes a sufficient nexus between the past and the charged crimes. The specific facts and circumstances of a particular case must govern whether the evidence should be admitted. However, I reject the prosecutor's suggestion that this Court adopt a liberal application of the doctrine of chances lest it weaken the prohibition against character evidence, especially when used to prove *actus reus*.[29]

I strongly disagree with the majority's position that the past fires were admissible to negate defendant's claim that the fire was a mere accident. First, the majority claims that the other acts must be only of "the same general category." This is contrary both to *Crawford*, as discussed earlier, and to *Rex v Smith*, the case that gave birth to the doctrine. Similarity was essential in *Rex v Smith*: the defendant's previous two wives were found drowned in the bathtub, just as was *Smith*'s present wife.[30] Also, in *Woods*: nine children under the defendant's care suffered at least 20 episodes of cyanosis, and seven of these children died. The defendant was on trial for the murder of her eight-year-

---

[29] See Imwinkelried, 51 Ohio St L J at 588.

[30] *Smith*, 11 Cr App R at 230. See also Eggleston, *Evidence, Proof and Probability* (2d ed 1983), pp 92-93.

old son who died the same way.[31]  A showing of similarity should be essential in the case on appeal, as well.

To allow prior acts evidence under the doctrine of chances whenever someone has the misfortune of being connected to an event of "the same general category" eviscerates the concept that "in our system of jurisprudence we try cases, rather than persons . . . ."[32] Furthermore, a majority of this Court in *VanderVliet* cautioned that using unlikely coincidence to prove *actus reus* "requires a more rigorous enforcement of relevancy because it more closely approaches the forbidden inference of character to conduct."[33]

Because the evidence of the past fires in this case was not admissible under MRE 404(b), I would hold that the trial court abused its discretion in admitting it.  It was impermissible character evidence.

## MRE 403

Even if the evidence of the previous fires were relevant, I would exclude it under MRE 403 because the danger of unfair prejudice substantially outweighed its probative value.  *People v Oliphant* discusses the framework for evaluating evidence under MRE 403:

---

[31] *United States v Woods*, 484 F2d 127 (CA 4, 1973).

[32] *Crawford,*458 Mich at 384, citing *United States v Mitchell*, 2 US 348, 357; 1 L Ed 410 (1795).

[33] *VanderVliet*, 444 Mich at 87 n 47.  *Actus reus* is defined as the wrongful deed that comprises the physical components of a crime and that generally must be combined with criminal intent to establish criminal liability.  Black's Law Dictionary (8th ed).

15

In determining admissibility [under MRE 403] the court must balance many factors including: the time necessary for presenting the evidence and the potential for delay; how directly it tends to prove the fact in support of which it is offered; whether it would be a needless presentation of cumulative evidence; how important or trivial the fact sought to be proved is; the potential for confusion of the issues or misleading the jury; and whether the fact sought to be proved can be proved in another way involving fewer harmful collateral effects.[34]

Evidence is unfairly prejudicial if a danger exists that the jury will give marginally probative evidence undue or preemptive weight.[35] Under *Oliphant* and *Crawford*, whether the charged act is similar to the uncharged act is important when determining the probative value of the uncharged act. In this case, the probative value of the uncharged acts is slight given the dissimilarities between them and the charged fire.

The potential prejudice of introducing the other fires in this case was great. In fact, as long as it was not carefully examined, it was the best evidence that the prosecution had against defendant. The only substantive evidence against him was the fire investigators' testimony and a possible motive established by his need for money. When presenting her case, the prosecutor came back repeatedly to the previous fires. It is likely that the jury drew the unsubstantiated inference that defendant had the propensity to start fires.

In *Crawford*, this Court made a similar determination regarding the defendant's prior drug conviction stating:

---

[34] *People v Oliphant*, 399 Mich 472, 490; 250 NW2d 443 (1976).

[35] *Crawford*, 458 Mich at 398.

16

Even if we were to find that the evidence of the defendant's prior conviction had some logical relevance distinct from the impermissible character inference, we would nonetheless conclude that it should have been excluded by MRE 403 because the danger of unfair prejudice substantially outweighed whatever marginal probative value it might have had.

This Court added that "the specter of impermissible character evidence is likely to have significantly overshadowed any legitimate probative value."[36] The evidence at issue in *Crawford* was a prior conviction, which is arguably more prejudicial than the prior fires in this case because the prior drug offense was attributable to the defendant. In this case, it was only implied that defendant committed the prior fires. However, I believe similar logic applies.

Moreover, the fact sought to be proved in this case, a lack of accident, could have been argued through other, less prejudicial evidence.[37] Specifically, the prosecution put three experts on the stand. Two stated that, in their opinion, the fire was arson. One reasoned that the burn patterns ruled out accidental causes. In fact, the prosecution concedes that "there was substantial evidence that the instant fire was an incendiary fire, set by some human agency."[38] In addition, the prosecution presented circumstantial

---

[36] *Id*. at 397-398.

[37] Cf. *United States v Lewis*, 224 US App DC 74, 80; 693 F2d 189 (DC Cir, 1982) (stating that extrinsic acts evidence was neither cumulative nor unnecessary where it "could prove something that the other evidence could not prove: that appellant . . . was the mastermind of the money order 'scam'").

[38] Prosecutor's brief, p 38.

evidence that defendant was associated with the fire, showing that he was the last person to leave the house and was in arrears on mortgage payments.

Therefore, the prosecution could have attempted to make its case for an intentional act without using past acts evidence that involved harmful collateral effects.[39] Given that the prior fires were dissimilar to the charged fire, the evidence about them was unnecessary to prove lack of accident, and its probative value was minimal.

However, because "[t]he distinction between a verboten character theory and a permissible chances theory is a thin line which a lay juror could easily lose sight of," I think that the prejudicial effect was high. There was little evidence connecting defendant to the fires, and the repeated references to the other fires likely greatly enhanced the danger of unfair prejudice.[40]

Finally, although the trial court gave a limiting instruction to the jury, because of the slight probative value of the evidence, the instruction was likely ineffective. As one

---

[39] Notably, this Court granted leave to appeal to determine if the other fires could be used to show a lack of accident. If the prosecution was seeking to use the other fires to prove identity, the acts were not sufficiently similar to be admissible. See *People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982), and Imwinkelried, 51 Ohio St L J at 589.

[40] See *Crawford*, 458 Mich at 400, n 17. Contrary to the majority's suggestion, this does not contradict the "inclusionary" approach to prior misconduct evidence. *Id.* at 400 n 8. ("The distinction between MRE 404(b) as a rule of 'inclusion' as opposed to a rule of 'exclusion' does not signify a shift to a more liberal policy toward the admission of prior acts evidence.") Nor does the inclusionary approach mean the courts should err on the side of admission. *Id.*

critic of the doctrine has noted "such a limiting instruction does more to satisfy legal scholasticism than to direct the minds of real jurors" because "[t]o the ordinary human mind, . . . the division between the prescribed and the proscribed uses [of the uncharged misconduct evidence] may be a bit difficult to perceive."[41]

Thus, the evidence of the other fires was inadmissible under MRE 403.

## HARMLESS ERROR

I agree with the Court of Appeals that the improper introduction of the evidence was not harmless. The evidence against defendant was not overwhelming and the prosecution relied substantially on the prior fires to argue the charged fire must have been intentional.[42] The prosecution argued in closing that defendant had a "pattern" of fires and that the prior fires were important to show his knowledge of fires and his intent. As a result, I agree with the Court of Appeals that the prosecution "relied substantially on the number of prior fires to argue that the charged fire must have been intentionally set by

---

[41] Imwinkelried, 40 U Rich L R at 442, quoting Uviller, *Evidence of character to prove conduct: Illusion, illogic, and injustice in the courtroom*, 130 U Pa L R 845, 879 (1982).

[42] Although not affecting this analysis, I also note that after defendant was convicted, an expert who previously worked with the Detroit Fire Department offered to investigate on a pro bono basis. He tested a power cord that ran behind the couch to an electrical outlet. Defendant's roommate testified that the power cord was to a computer and had to be "jiggled" to get the computer to work. Defendant's electrical expert tested the wiring and junction box and determined that they were the cause of the fire. The testing was videotaped. None of the prosecution's witnesses tested this box or wire. This evidence, in correlation with the improperly admitted evidence in this case, raises serious concerns about the fairness of defendant's trial.

defendant."[43]  Because of this, there was a high chance that the evidence of the other fires affected the outcome.

CONCLUSION

The evidence of past fires that was introduced at trial was improper character evidence and it was therefore not relevant.  I would not carve out an exception to admit the evidence under the doctrine of chances given the dissimilarities between the past fires and the charged fire.  The past-fires evidence was also inadmissible under MRE 403 because the danger of unfair prejudice substantially outweighed whatever probative value it had.  The error in admitting the evidence of the past fires was not harmless.

Accordingly, the Court of Appeals properly remanded this case for a new trial.

CAVANAGH and HATHAWAY, JJ., concurred with KELLY, C.J.

---

[43] *Mardlin*, unpub op at 5.