# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JIMMIE EARL MCCASKILL,

Defendant-Appellant.

UNPUBLISHED
March 10, 2015

No. 318257
Wayne Circuit Court
LC No. 11-010092-FC

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right jury convictions of armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. We affirm.

Defendant's convictions arise from the July 21, 2011 robbery of a CVS store located at 2590 W. Grand Boulevard in Detroit (the Grand Blvd. CVS). At trial, the prosecution presented evidence that defendant was involved in a similar robbery on July 13, 2011, at another CVS store located at 18585 E. Warren Avenue in Detroit (the Warren Ave. CVS). There was evidence identifying defendant as one of the robbers in both robberies. Defendant maintained that he was mistakenly identified.

In the Grand Blvd. CVS robbery, defendant's accomplice ascertained that Myiea Summerour was a manager and then, after conversing with defendant in another aisle, both men walked back to her, defendant showed her a gun that he had tucked in his shorts, and defendant told her to take the other man back to the safe. Noelle Beasley, who was in the back, opened the safe and gave the man $5,373. Meanwhile, defendant stopped Kenyetta Marshall when she observed what was happening and told her not to move, showing her the imprint of the gun on his hip and stating that it was not her money. After the robbers left, Summerour called 911.

Both Marshall and Beasley were unable to identify defendant in a photographic lineup, which was not shown to Summerour. Beasley identified someone else. In a subsequent live lineup, Beasley could not identify defendant, and Marshall picked someone else, but Marshall identified defendant at trial as the person who stopped her. Summerour picked defendant out of a live lineup and identified him at trial. However, she had initially indicated that the perpetrator was shorter than defendant, stockier, and had a lighter complexion, and did not notice a lack of teeth.

-1-

In the Warren Ave. robbery, Carlos Chavez, the manager on duty, was called from the back room because defendant wanted to talk to him; defendant inquired whether CVS was hiring and, while defendant was subsequently filling out paperwork, he raised up his shirt, revealing a gun, and told Chavez that when he was done they were going to go to the back room and Chavez was going to give him money. Defendant also advised that he was with another man who was with an employee (Antonio Allen) in the photo department. As they walked to the office past the photo area, defendant held the gate for his accomplice and Chavez. Allen said that defendant stayed with him and showed him a bulge under his shirt. Chavez said that when he and the other man reached the office, he gave the other man all the cash he had, that the man left the office, and that he watched him and defendant leave the store. Allen then called 911.

Chavez identified defendant in a photographic lineup, but Allen was unable to do so. Both Chavez and Allen identified defendant in a live lineup. Chavez indicated that the perpetrator had a black mustache, did not note any gray, even though defendant had gray in his goatee at the time of the photo and live lineup, and said that he had "some teeth"; at the preliminary examination, he had said that the perpetrator's teeth were "normal." Allen said he did not notice if the person did or did not have teeth.

Defendant first argues that Officer Roland Brown impermissibly invaded the province of the jury when he testified, on cross-examination by defense counsel, that defendant was the person in both a surveillance video and in still photographs taken from the video, and when he opined that Beasley was wrong when she identified someone besides defendant as one of the robbers. However, defendant waived appellate review of this issue because this testimony was elicited by defense counsel and "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence." *People v Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999), overruled on other grounds by *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007). But even if the issue was not waived, we would find no error requiring reversal. Although it might have been error to admit such evidence under other circumstances, see *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013) and *People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013), in this case the officer qualified the challenged comments, noting that his conclusion was based on an anonymous tip and witness identifications. Therefore, it was not "more probable than not" that the jury would have reached a different conclusion without this evidence. See *People v Lukity*, 460 Mich 484, 497; 596 NW2d 607 (1999).[1]

Defendant next argues that defense counsel was ineffective by bringing this information out on cross-examination. Because defendant did not raise this issue in a motion for a new trial

---

[1] We note that similar comments were found to be error requiring reversal in *People v McCaskill (On Remand)*, unpublished opinion per curiam of the Court of Appeals, issued November 18, 2014 (Docket No. 312409), lv pending, in which this Court reversed defendant's convictions in the Warren Ave. CVS case. In that case, however, it was the prosecutor who elicited two of Officer Brown's statements, there was an objection, Marshall did not identify defendant as the perpetrator at the trial, and the defendant offered alibi testimony. These differences distinguish that case from the present case.

-2-

or seek a *Ginther*[2] hearing, our review is limited to mistakes apparent on the record. *People v Sabin* (*On Second Remand*), 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

The Sixth Amendment to the United States Constitution and Article I, § 20 of the Michigan Constitution guarantee the right to effective assistance of counsel for criminal defendants. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish that counsel did not render effective assistance, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (internal quotation marks and citation omitted).

Counsel has wide discretion in matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). "What arguments to make in closing, how to cross-examine witnesses, and what evidence to present all involve matters of trial strategy," *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999), and "[t]his Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

It appears that the purpose underlying the cross-examination of Officer Brown was to show that his investigation was compromised because he did not consider other leads and focused only on defendant. Counsel established that Officer Brown zeroed in on defendant, relying on an anonymous tip and other witness identifications, while ignoring that Beasley identified someone else in a photo lineup, that Marshall was unable to identify defendant from the photos, and that a photograph was not taken of the live lineup which would have showed whether the other participants looked similar to defendant. Thus, in context, it appears that counsel's strategy was to establish that the information Officer Brown had identifying defendant as the perpetrator was weak, and his focus on defendant blinded him to other viable leads regarding the true perpetrator. Defendant has not overcome the presumption that this was a reasonable trial strategy. See *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

Defendant next argues that it was improper to introduce the other acts evidence relative to the Warren Ave. CVS robbery and that the admission of this evidence deprived him of due process. Because defendant did not object to this evidence at trial, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

MRE 404(b)(1) precludes evidence of an individual's character to prove "action in conformity therewith," but permits it "for other purposes, such as proof of motive, opportunity,

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." That is, other acts evidence may be admissible for non-character purposes and is a rule of inclusion, not exclusion. *People v VanderVliet*, 444 Mich 52, 65, 74-75; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994). To be admissible, other acts evidence (1) must be offered "under something other than a character or propensity theory," (2) must be "relevant under MRE 402," and (3) "the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403." *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). In *VanderVliet*, 444 Mich at 69, the Court held that "[w]here the proponents' theory is not that the acts are so similar that they circumstantially indicate that they are the work of the accused, similarity between charged and uncharged conduct is not required." In *People v Sabin*, 463 Mich 43, 63; 614 NW2d 888 (2000), the Court clarified that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system."

Contrary to defendant's argument, the evidence in this case established more than a "general similarity" between the two crimes and more than just two robberies of CVS stores. In both robberies, defendant ensured that he was dealing with someone in authority, by asking Summerour if she was a manager and by asking that Chavez be called from the back room. In both instances, he revealed that he had a gun on his person without brandishing it. In both instances two perpetrators were involved; a manager was taken to the back room; defendant stayed in the store area while the other perpetrator went into the back room with the manager; and only cash was taken. These common elements were so similar that they "circumstantially indicate[d]" that they were the work of the same perpetrator or perpetrators. See *VanderVliet*, 444 Mich at 69. Stated differently, they were "sufficiently similar to support an inference that they [we]re manifestations of a common plan, scheme, or system." *Sabin*, 463 Mich at 63. Accordingly, there was no error, let alone plain error, in the admission of this other acts evidence. And because there was no error in the admission of the other acts evidence, there was no due process violation. See *People v Roscoe*, 303 Mich App 633, 646-647; 846 NW2d 402 (2014).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood