# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BIRL LEILOKIE HILL,

Defendant-Appellant.

UNPUBLISHED
June 16, 2016

No. 326550
Saginaw Circuit Court
LC No. 14-040254-FC

Before: SAWYER, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

Defendant appeals by right from his conviction following a jury trial of one count each of first-degree premeditated murder, MCL 750.316, first-degree felony murder, MCL 750.316(1)(b), delivery of Oxycodone, MCL 333.7401(2)(b)(*ii*), extortion, MCL 750.213, unlawful imprisonment, MCL 750.349b, carrying a dangerous weapon with unlawful intent, MCL 750.226, and felon in possession of a firearm, MCL 750.224f, as well as five related counts of possession of firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of life for the first-degree murder conviction, 47 months to 126 months for the delivery of Oxycodone conviction, 175 months to 360 months for the extortion conviction, 125 months to 270 months for the unlawful imprisonment conviction, 47 months to 90 months for the carrying of dangerous weapon with unlawful intent conviction, and 47 months to 90 months for the felon in possession of a firearm conviction. He was also sentenced to five terms of 24 months for his felony-firearm convictions, to be served concurrently with each but consecutively to the underlying felonies. We affirm.

## I. FACTS

This prosecution stems from the murder of 23-year-old Jessica Callan, who was found dead in a cemetery from a single gunshot wound to the head. The evidence adduced at trial established that defendant and the victim met on the day of her murder in Midland and had a confrontation over a drug deal gone bad. Defendant drove the victim from Midland to Saginaw and retrieved a handgun from the residence of an acquaintance. Defendant drove off with the victim in the car and returned later without her. Defendant told certain persons that he was going to kill the victim before she was shot, and bragged later that he had done so. The forensic pathologist who performed an autopsy on the victim testified that the victim died from a close

-1-

range gunshot wound to her forehead. The pathologist testified that the bullet went through her skull and brain stem, before exiting through the left side of the back of her head.

## II. ANALYSIS

## A. EXPERT TESTIMONY

Defendant argues that the trial court erred in allowing Michigan State Police Trooper Neil Somers to provide testimony on the locations of the victim's and defendant's cell phone at certain times during the evening the victim was killed. Defendant did not raise a specific and timely objection below to the admission of the evidence. See *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). At most, defense counsel verbalized some hesitation with Somers's qualifications. Thus, the issue is unpreserved. We review unpreserved claims of evidentiary error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). If plain error is shown, reversal is only warranted when it resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence. *Id.* at 764.

MRE 702 provides as follows:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The underpinning of MRE 702 is that the "trial court must ensure that all expert opinion testimony, regardless of whether it is based on novel science, is reliable." *People v Steele*, 283 Mich App 472, 481; 769 NW2d 256 (2009).

The court recognized Somers as an expert in the area of cell phone data analysis. Somers testified regarding his qualifications and training as follows:

> Initially in 2008 I took training from a company called Public Agency Training Council in cell phone, forensics of cell phone records. Again in two-thousand—I have to review, but I believe in 2012, I took a similar refreshing course from that company. I've also been down to the Secret Service's school down in Birmingham, Alabama, in basic cell phone investigations.

Somers testified that since 2008, he had been involved in almost 100 cases where he assisted the Michigan State Police and other agencies "in looking at cell phone records to determine calls that were made and where those calls possibly have been made from."

The court's determination that Somers was qualified to give expert testimony in the area of cell phone data analysis was not erroneous. He testified to continuing training in the area and

a considerable amount of experience in applying the principles he had learned. In other words, he demonstrated he possessed the "knowledge, skill, experience, training, [and] education" necessary to be recognized as an expert in the area.

"When evaluating the reliability of a scientific theory or technique, courts consider certain factors, including but not limited to whether the theory has been or can be tested, whether it has been published and peer-reviewed, its level of general acceptance, and its rate of error if known." *People v Kowalski*, 492 Mich 106, 131; 821 NW2d 14 (2012). However, "[t]he trial court's role as gatekeeper does not require it . . . to admit only uncontested evidence, or to resolve genuine scientific disputes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Rather, the proper inquiry is whether the expert opinion is rationally derived from a sound foundation, not whether it is ultimately correct or universally accepted. *Id.*

After a review of the cell phone data, Somers was able to provide the jury with specific times and durations of calls made between the phones of defendant and the victim. Using these cell phone records, and knowing the location of cell phone towers in the Midland and Saginaw areas, Somers was able to determine which cell phone towers were implicated in certain calls. Based on the data, the validity of which is not in question, Somers was able to essentially map the progression of the two cell phones at the identified time on the day of the murder.

Somers' expert opinion on the locations of the two cell phones was "rationally derived from a sound foundation." *Id.* Somers' methodology was logical, albeit somewhat inexact. However, Somers explained to the jury that locations of the cell phones he identified were not exact, but an approximation. And the jury was instructed that it should decide whether it believed any of the expert testimony given "and how important you think it is."

And the evidence was relevant to determining a fact in issue as it mapped out the movement of the phones on the night of the murder, including placing defendant's cell phone in the vicinity of the cemetery where the victim's body was discovered. From this evidence it can be reasonably inferred that defendant was also present at the scene. Thus, no plain error has been shown.

## B.  SIMILAR ACTS EVIDENCE

Defendant's girlfriend in 2010, and the owner of the car defendant was driving on the night of the murder, testified that she and defendant drove to an abandoned house sometime in late June or July of 2010, and she noticed that he had a gun on him. She stated that she did not see the gun but assumed that he had a gun because he was "messing with his hands." Defendant argues that the trial court erroneously admitted this evidence. He argues that this was other acts evidence for which he was not provided the required notice.

Defendant preserved this issue with a specific and timely objection to the admission of the evidence, which the court denied. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). An abuse of discretion occurs when a trial court chooses an outcome that falls outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

"Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *Burns*, 494 Mich at 110.

MRE 402 provides that "[a]ll relevant evidence is admissible." Evidence is relevant if it has a tendency "to make the existence of any factual consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; see also *People v Sabin*, 463 Mich 43, 57; 614 NW2d 888 (2000). "Relevant evidence thus is evidence that is material (related to any fact that is of consequence to the action) and has probative force . . . ." *People v Sabin*, 463 Mich 43, 57; 614 NW2d 888 (1995). A material fact "'need not be an element of a crime or cause of action or defense but it must at least be "in issue" in the sense that it is within the range of litigated matters in controversy.'" *People v Mills* at 68, quoting *United States v Dunn*, 805 F2d 1275 (CA 6, 1986).

The admission of other acts evidence reflecting on a defendant's character is limited by MRE 404(b) to avoid the danger of conviction based on a defendant's history of other misconduct rather than on the evidence of his conduct in the case in issue. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). Evidence of other crimes or acts is admissible under MRE 404(b) if such evidence: (1) is offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime; (2) is relevant to an issue or fact of consequence at trial; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 111 (1993), amended on other grounds 445 Mich 1205 (1994). Generally, under MRE 404(b)(2), the prosecution must provide reasonable pretrial notice of the nature of other acts evidence it intends to introduce and the rationale for admitting the evidence. *People v Hawkins*, 245 Mich App 439, 454; 628 NW2d 105 (2001).

Defendant was charged with several crimes that involve the possession of a firearm. There was testimony that defendant retrieved a .38 handgun from a garage before driving off with the victim. The victim died from a gunshot wound to her head. The gun was never recovered. The challenged evidence helped to establish that defendant was in possession of a gun during the relevant timeframe, a fact of consequence to several of the charges filed. The prosecutor made it clear at trial that the evidence went to the issue of defendant's access to a gun, i.e., "specific evidence related to the crime." It was not being offered as other acts evidence, and the prosecutor did not argue it that way during closing argument. The court did not abuse its discretion in admitting the challenged testimony.

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder

-4-